## NOBLE *et al.* v. BURNEY.

1. Proof that an agent has authority to receive payments of rent does not necessarily show that he is authorized to renew a lease of the rented property; but such fact is a circumstance that may throw light upon the extent of the agency, when the right to renew the lease is in question.

2. When the issue is as to the authority of an agent to renew a lease, and there is evidence that the authority of the agent at the time of the renewal was the same as it was during the lifetime of the predecessor in title of the alleged lessor, evidence as to the transactions of the alleged agent during the lifetime of the predecessor in title of the alleged lessor are admissible in evidence.

3. There was evidence authorizing an instruction to the jury on the subject of ratification of an unauthorized act of an agent.

4. The evidence, though conflicting, was sufficient to authorize the verdict. If any of the rulings complained of were erroneous, the error was not of such a character as to require the granting of a new trial.

Argued January 22,—Decided February 19, 1906.

Eviction. Before Judge Henry. Floyd superior court. March 21, 1905.

The plaintiffs sued out a warrant to dispossess the defendant from the possession of a certain storehouse in Rome. A counter-affidavit and bond were given by the defendant. At the trial it was agreed between the parties that the defendant occupied the building from February 1, 1902, to February 1, 1903, and that he had paid into court $480 rent at the rate of $40 per month; and the issue was whether the plaintiffs had rented the defendant the premises for the year named through M. D. McOsker, whether McOsker was authorized to act as agent for the plaintiffs, and, if not, whether the plaintiffs ratified the act of McOsker. If the plaintiffs' contention were established, the defendant owed an additional $480 as a balance of double rent, as a tenant holding over. The jury found for the defendant. The plaintiffs moved for a new trial, which was refused, and they excepted.

*Denny & Harris,* for plaintiffs.
*McHenry & Maddox,* for defendant.

COBB, P. J. (After stating the foregoing facts.) 1. Error was assigned upon the admission of the testimony of the defendant that he had made payments of rent upon the premises in dispute by checks payable to M. D. McOsker, for the reason that it was immaterial to whom the defendant paid rent, as the issue was whether McOsker was authorized to make the contract of rent. We think this evidence was admissible. Proof that an agent has authority to receive payment of rent does not necessarily show that he is authorized to make a contract of rental, but it is a circumstance that the jury may consider in passing upon the issue, and throws light upon

61

the relation in which the alleged agent stands to his principal. There was evidence that McOsker, previously to February 1, 1902, asked the defendant if he wished to renew his contract of rental for the year following that date, and that the defendant had replied, "Yes." After this conversation, the defendant told McOsker he wished some repairs made in the building. In testifying to this conversation, the defendant added, "I did not care whether he did or did not do it." This testimony as to the state of the defendant's mind at the time of the conversation was irrelevant. What he said to McOsker was pertinent. What he thought was immaterial. The evidence was inadmissible, but we do not think its admission was so harmful as to require the grant of a new trial.

2. Error was assigned upon the admission in evidence of a contract of rental between Mrs. Jenifer Noble, by her agent M. D. McOsker, and the Rome Light Guards, to a portion of the building in which the store in controversy was located; and also upon the admission of the testimony of Walter Harris, that he had rented a portion of the same building during the life of Mrs. Noble, and after her death, when the property went to her daughters, the plaintiffs in this case, and that he had made the rent contracts with McOsker, and had paid the rents to him. Ordinarily any evidence tending to show McOsker's relation to Mrs. Jenifer Noble would be foreign to the issues in this case. But there was evidence from one of the plaintiffs to the effect that the relation between the plaintiffs and McOsker was the same as the relation between Mrs. Noble and McOsker. In view of this statement, we think the evidence objected to was admissible.

Error was assigned upon the action of the court in excluding a letter from the plaintiffs to McOsker, which was dated August 27, 1901, and contained a rejection of a proposal from certain parties to rent the premises in dispute, and a statement of the amount for which the plaintiffs would lease the building. It is contended that this letter was evidence of the fact that McOsker had no authority to rent the property of the plaintiffs, and that they had retained complete control over their property. This letter amounted to nothing more than a declaration of a party in his own interest, and was properly excluded. The evidence of West, who would have testified to what McOsker told him, about the same date, as to the extent of

his (McOsker's) authority to rent the building, was also properly excluded, for the same reason.

Error is assigned upon the admission of the testimony of Govan, as follows: "What was said about these improvements as a condition to that contract?" A. "I don't recollect anything at all." Govan was present when the conversation between McOsker and the defendant took place, which it was claimed constituted the contract of rental. It is said that this testimony was the witness's construction of the contract. We do not think so. The words spoken by McOsker or the defendant in this conversation made out the contract, and any saying of either during that conversation was pertinent and admissible.

3. In the last three grounds of the motion error is assigned upon portions of the charge of the court which state the issues to be whether a contract was made between the parties, whether McOsker had authority to make such a contract, and, if not, whether the plaintiffs ratified the acts of McOsker, and what would constitute agency and ratification. It is said that there was no evidence of any contract between the parties, no evidence of any authority for McOsker to make a contract, and no evidence of ratification; and that for these reasons the charge was erroneous, and that it stressed too strongly the contentions of the defendant. If there was no evidence upon these issues, there was nothing for a jury to pass upon, and the court would have been authorized to direct a verdict for the plaintiffs. But we think the charge was proper under the evidence in the case, and as a whole it did not stress too strongly the contentions of the defendant.

4. It remains to be seen if there was sufficient evidence to authorize a finding in favor of the defendant. The defendant testified that "in August or September McOsker came in and said, 'This is about time to rent houses for another year,' and wanted to know if the witness would stay on another year, and the witness told him, 'Yes;' that was all there was to it." This would constitute a contract between the parties. The evidence as to McOsker's authority was very conflicting. Burney, the defendant, had gone into possession of the premises some time before the beginning of the term in dispute, and had always dealt with McOsker as the agent of the plaintiffs. He had paid all rents to McOsker, and had no dealings with any one else. The evidence of the plaintiffs and Mc-

Osker denied the authority of McOsker to make contracts but admitted his agency in many other respects. Their evidence was to the effect that McOsker dealt with the tenants of the building in collecting rents, etc., but submitted all proposed contracts to the plaintiffs for approval. There was also evidence to the effect that McOsker had made contracts of rent with other tenants of the building, dealing with them as one authorized to make rental contracts. The entry of the defendant upon the premises was made under McOsker, and he had been recognized as a tenant by the plaintiffs before the beginning of the disputed term. Whether or not McOsker was the authorized agent of the plaintiffs was a question for the jury, and was properly submitted to them. *Wilson* v. *Huguenin,* 117 *Ga.* 547. "It is true that agency may be proved from the habit and course of dealing between the parties, that is, if one has usually or frequently employed another to do certain acts for him, or has usually ratified such acts when done by him, such person becomes his implied agent to do such acts." Graves *v.* Horton (Minn.), 35 N. W. 568. See Mechem on Agency, §84; 1 Am. & Eng. Enc. Law, 959 et seq. The evidence as to the ratification of McOsker's actions was not strong. A letter from one of the plaintiffs to the defendant, dated March 19, 1902, was as follows: "Your letter of the 16th just received. Mr. McOsker has nothing further to do with the collection of rents for the store, and would be obliged if you would pay to Mr. Denny, who has now the collection of the rents." Upon its face this would seem a ratification of the alleged contract of rental with McOsker. It was said by counsel for the plaintiffs that this letter meant that Mr. Denny was the plaintiffs' attorney, and was in charge of the matter of dispossessing the defendant, and that in telling the defendant to pay the rent to Mr. Denny the plaintiffs were only referring defendant to their attorney. This construction of the letter can not be derived from the record. "Slight circumstances and small matters will sometimes suffice to raise the presumption of ratification." *Haney Co.* v. *Hightower Institute,* 113 *Ga.* 296. The weight of the evidence might have been in favor of the plaintiffs, but it did not demand a verdict in their favor; and as the trial judge has approved the finding of the jury, we will not control the exercise of his discretion. *Judgment affirmed. All the Justices concur.*