## 60351. DeBOARD v. SCHULHOFER et al.

DEEN, Chief Judge.

The appellant is the administrator of the estate of Elizabeth DeBoard, a named defendant in this complaint along with Atlanta Union Terminal (her wholly owned corporation), her son Robbie Llewellyn (its treasurer) and one Lester Cohen. Cohen was later dismissed.

While Mrs. DeBoard was hospitalized her son Llewellyn who was managing the business entered into an agreement with plaintiffs Schulhofer and Strauss to sell them 20 percent of the corporate stock belonging to his mother. On her return from the hospital he told her he had sold the stock and she did in fact sign over the certificates. However, following a suggestion of the appellees' attorney it appears that instead of a straight sale contract a demand promissory note and option to purchase were prepared, signed for the corporation by Llewellyn, guaranteed by Llewellyn and Cohen personally, and given in exchange for a check for $12,500 from each of the defendants. Papers securing the "loan" were also executed pleading corporate assets. Exactly what happened to the $25,000 is not clear, but sufficient circumstantial evidence was offered to support an inference that a large part of the fund was deposited in the corporation accounts of AUT and other corporations belonging to the appellant.

The plaintiffs eventually exercised their option not to purchase the stock, asserted that the entire transaction was a violation of the Georgia Securities Act, and called for payment of the demand note. When this was refused they brought a three count complaint. Llewellyn, Cohen and the corporation were found liable on summary judgment orders on the basis that the loan/option agreement was an unregistered security under Code § 97-105, the offer to sell thereunder being unlawful under Code § 97-112. These judgments are not appealed from. The only remaining jury question is whether

DeBoard was also liable as a corporate officer, controlling person or participant in the issuance of the illegal offer. The jury found for the plaintiffs on this issue, and Mrs. DeBoard's motions for new trial and judgment notwithstanding the verdict were denied.

1. The plaintiffs here testified positively that the appellant's son Llewellyn and her attorney both assured them they had authority from the appellant to enter into the loan/stock agreement under which the $25,000 was procured. Mrs. DeBoard denied this, but admitted that when her son came to her about two weeks after she was out of the hospital with the statement that he had sold a 20 percent interest in the corporation to the plaintiffs she ratified the action by signing the stock certificates. These, of course, were never actually delivered because the plaintiffs in the meantime chose to not take up the option to buy the stock. Other circumstantial evidence supports a finding that Llewellyn had blanket authority from his mother to run the financial affairs of the company. She testified that he did all the bookkeeping; she did not understand this phase of the business. He received all funds, made deposits, and allocated funds. He had in the past signed checks for the company, had signed financing statements, had issued payroll checks, and by his own statement offered the stock for sale "because I felt eventually I'd get her to sign the stock certificate" which she in fact did. This and other evidence establishes a course of dealing in which the appellant operated the business by purchasing liquor and handling cash sales, leaving the other aspects of the business to her son to administer as company treasurer, she testifying that she knew nothing about administration of the accounts and financial aspects of the business.

Shares of stock are securities, which it is unlawful to sell in violation of Code § 97-103. Code § 97-112 (a). This stock was issued without compliance with Code § 97-103 and the offer to sell it to the plaintiffs, followed by the giving of a promissory note and option to purchase and receiving $25,000 in cash in return, was accordingly unlawful and imposed upon the responsible parties the liabilities set out in Code § 97-114. This includes the appellant if she directly or indirectly controlled her son, the corporate treasurer administering the affairs of the company in her absence, unless she "sustains the burden of proof that she did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist." Code § 97-114(b)(b). The liability is predicated on control of the agent, including the uncontroverted fact that two weeks after the event the appellant chose to sign the stock certificates which were to have been delivered to the plaintiffs had they chosen to take up the option. Habit and course of dealing may also be considered in determining agency.

*Noble v. Burney,* 124 Ga. 960, 964 (53 SE 463) (1905). And in determining ratification, where one becomes aware of facts sufficient to put him on notice of an unauthorized act and affirms the act without further investigation, an inference of willingness to assume the concomitant risks may be inferred. Restatement of Agency 2nd, § 91 (e). Since there was evidence from which an inference is authorized that sums from the "loan" were deposited in accounts controlled by the appellant, her failure to offer to return these amounts, if the jury believed she had in fact received them, estops her from asserting any lack of responsibility for the transaction. Cf. *American Ex. Nat. Bank v. Ga. Const. & Invest. Co.,* 87 Ga. 651, 657 (13 SE 505) (1891). The appellant in fact testified that her son, when questioned, told her the sums had been put in the business and, so far as she knew, the money "just went." Her acceptance of this explanation in her position as a "controlling person" is exactly what the Georgia Securities Act decries in placing liability on one who, as sole owner, does nothing to repudiate acts ostensibly done in her behalf but illegally and without her authority. "The Georgia Securities Act is remedial in nature, intended for the protection of investors, and is to be broadly and liberally construed to effectuate its aim. Conversely, its exceptions must be narrowly viewed." *Blau v. Redmond,* 143 Ga. App. 897, 900 (240 SE2d 273) (1977). *Carter v. Pembroke Nat. Bank,* 11 Ga. App. 479 (75 SE 824) (1912) and *Exchange Bank v. Thrower,* 118 Ga. 433 (45 SE 316) (1903) are not authority to the contrary; neither one deals with the strictures of the Georgia Security Act and neither deals with the question of ratification. Nor is *Lane v. Pardue,* 147 Ga. App. 877 (250 SE2d 574) (1978) of comfort to the appellant. As we read that case it holds merely that, on motion for summary judgment, the burden lies upon a defendant to show that he is excluded from those classes of persons on which liability is imposed by the act. Regardless of whether the summary judgment decisions rendered previously to this jury trial settled as the law of the case that the offer to sell stock in the Atlanta Union Terminal, Inc. was a violation of the Securities Act, the evidence on the trial shows without contravention that such was the case.

2. The remaining enumeration of error merely states that the court erred in giving "conflicting and erroneous" instructions, without any identification of what is referred to. The appellant's brief does quote certain excerpts from the charge, which refer to the action as a breach of contract, and which were objected to not by counsel for the appellant but by the attorney for the appellees. An enumeration urging error for a reason different from that urged at the time cannot be considered. *Craig v. State,* 130 Ga. App. 689, 692 (204 SE2d 307)

(1974). Nor can their scope be enlarged by statements in the brief. *Echols v. State,* 149 Ga. App. 620 (3) (255 SE2d 92) (1979). All the more will this court not consider an objection not urged by the appellant on the trial of the case. *Bell v. State,* 144 Ga. App. 692 (1) (242 SE2d 345) (1978). The statement of counsel, after the court had given a further instruction on violation of the Georgia Securities Act, that he was not altogether satisfied with the additional charge, does not affect the instructions concerning breach of contract complained of in the brief of counsel, and particularly so where the court, after explaining possible Security Act violations, added: "So that's the way you have to consider the case. So don't worry about the breach of contract aspects of it." No reversible error results from the instructions given.

*Judgment affirmed. Birdsong and Sognier, JJ., concur.*

ARGUED SEPTEMBER 8, 1980 — DECIDED OCTOBER 7, 1980 — REHEARING DENIED OCTOBER 21, 1980.

*Robert S. Wayne, Robert J. Kaufman,* for appellant.
*Charles T. Lester, Jr., Scott H. Kaplan,* for appellees.
Robert B. Llewellyn, *pro se.*