**Sunday L. SANCHEZ, Plaintiff,**

v.

**CITY OF MIAMI BEACH, Defendant.**

**No. 87–2029–CIV.**

United States District Court,
S.D. Florida.

Aug. 28, 1989.

Bernard B. Weksler, Coral Gables, Fla., for plaintiff.

Peter J. Hurtgen, Michael G. Whelan, Miami, Fla., for defendant.

FINAL JUDGMENT INCLUDING FINDINGS OF FACT, CONCLUSIONS OF LAW, AND PERMANENT INJUNCTION

ARONOVITZ, District Judge.

THIS CAUSE having come for trial before the Court on July 31, August 2, 3, 4, and 8, 1989 the following constitute this Court's findings of fact, conclusions of law, entry of a permanent injunction, and final judgment. The Plaintiff SUNDAY L. SANCHEZ, a female police officer employed by the City of Miami Beach, Florida, brought this action alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against Defendant CITY OF MIAMI BEACH. Specifically, Plaintiff contends that the City of Miami Beach permitted a sexually hostile and offensive work environment within the City of Miami Beach Police Department, and additionally subjected her to disparate treatment based on her sex concerning advancement, training and promotion. *Complaint*, pp. 28–33.[1]

To remedy these violations, Plaintiff prays for a declaratory judgment, permanent injunction, and restraining order concerning her claim of sexual harassment and hostile work environment, and seeks appropriate back-pay and reimbursement for lost experience, training, and educational opportunities allegedly withheld on the basis of sex. Additionally, Plaintiff seeks attorney's fees and costs. *Complaint*, pp. 35–37.

The Defendant claimed in its May 4, 1988 Answer that it had at all times upon receiving complaints from Plaintiff taken immediate and appropriate constructive action to alleviate the alleged sexual harassment and abusive work environment. In addition, Defendant denied any wrongdoing concerning Plaintiff's advancement, training or promotion for which she had applied and was qualified. Defendant contended that any denial was for non-discriminatory business reasons and therefore could not result in either actual or constructive discharge. *Answer*, p. 4.

A Pre–Trial Conference was held on February 29, 1989 at which the Court accepted and adopted the parties' bilateral pre-trial stipulation as governing the course of the proceedings at trial. On July 31, 1989 this case was called to trial.

■ Title VII sex discrimination cases traditionally afford no right to a jury trial, even when the Plaintiff seeks back-pay or other lost professional benefits. These "benefits" are not in the nature of a claim for damages, but rather are an integral part of the statutory equitable remedy fashioned by Congress in order to return Plaintiff to the position she held before the alleged unconstitutional conduct. *Wilson v. City of Aliceville*, 779 F.2d 631 (11th Cir.1986); *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182 (11th Cir.1985) (citations omitted). This case, however, was tried to an advisory jury. Fed.R.Civ.P. 39(c).

Federal Rule of Civil Procedure 39(c) allows the court on its own initiative to try any issue before an advisory rather than a regular jury. An advisory jury's findings of fact are not binding on the trial court. Indeed, the court is free to adopt its findings in whole or in part or to disregard them altogether. *Wilson*, 779 F.2d at 635–36 (citing *Sheila Shine Products, Inc. v. Sheila's Shine, Inc.*, 486 F.2d 114 (5th Cir. 1973)).[2]

---

1. Originally, in her November 5, 1987 complaint, Plaintiff also sought relief for intentional infliction of emotional distress as a pendant claim to the federal questions raised in the first two Title VII counts. Also, Plaintiff named Rob W. Parkins, Kenneth Glassman, and the City of Miami Police Department as defendants. By Order dated April 20, 1988 this Court dismissed the pendant state claim as permitted by *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and dismissed Defendants Parkins, Glassman and the City of Miami Beach Police Department for want of jurisdiction. *Brown v. City of Miami Beach*, 684 F.Supp. 1081 (S.D.Fla.1988). Thus, Plaintiff proceeded to trial against the City of Miami Beach under two counts of Title VII sex discrimination.

2. Of course, if the parties consent, the jury's verdict could have the same effect as if trial by jury had been held as a matter of right. Fed.R. Civ.P. 39(c). In this case, the parties did not so

Upon concluding the presentation of evidence on August 8, 1989 the six person jury was instructed on the law, given a copy of the jury instructions, and provided a special verdict form to use during their deliberations. On the same day, the jury reached a verdict and returned the five question "Special Verdict" form. The questions and the jury's answers (in italics) were as follows:[3]

We, the JURY, return the following verdict as to Plaintiff, SUNDAY L. SANCHEZ:

1. Do you find from the totality of the circumstances that the City of Miami Beach subjected Plaintiff to a hostile, offensive or abusive work environment within the City of Miami Beach Police Department due to discrimination based on her sex?

_X_ Yes ___ No

*[INSTRUCTIONS OMITTED]*

2. Do you find from the totality of the evidence that the discrimination to which Plaintiff, SUNDAY L. SANCHEZ, was subjected was sufficiently severe or pervasive as to alter or affect a term, condition, or privilege [sic] of her employment within the City of Miami Beach Police Department?

_X_ Yes ___ No

*[INSTRUCTIONS OMITTED]*

3. Did the City of Miami Beach through management officials take proper and appropriate remedial action calculated to alleviate the sexual harassment and hostile work environment within the City of Miami Beach Police Department?

___ Yes _X_ No

*[INSTRUCTIONS OMITTED]*

4. Did the City of Miami Beach subject Plaintiff to disparate treatment within the City of Miami Beach Police Department as a result of her being denied admission to various training courses due to circumstances of discrimination based on her sex?

___ Yes _X_ No

*[INSTRUCTIONS OMITTED]*

5. What was the amount of damages, if any, suffered by SUNDAY L. SANCHEZ, for disparate treatment covered by denial of employment opportunities including professional and monetary benefits available to other employees within the City of Miami Beach Police Department?

$_____

*[INSTRUCTIONS OMITTED]*

SO SAY WE ALL.

*/s/ Frank Klein*
FOREPERSON
*8/8/1989*
DATE

Having been instructed on the law, then deliberating and responding to questions 1, 2, and 3 in the manner detailed, the jury found the Defendant City of Miami Beach liable under Title VII of the Civil Rights Act of 1964 for subjecting Plaintiff Sunday L. Sanchez to a hostile, offensive or abusive work environment as a result of sexual harassment. The jury, however, in question 4, found in favor of the City and against Plaintiff on her claim of disparate treatment concerning monetary and professional benefits. The jury correctly disregarded and left unanswered question number 5 where only a finding of liability for disparate treatment (question 4) would have necessitated a jury determination of monetary relief.[4] The equitable remedies

stipulate at the outset of trial so the jury proceeded in an advisory capacity.

**3.** The questions and jury's responses appear in full, save the Court's instructions given before and after each question. The special verdict form and jury instructions were derived from written proposals from both parties, then reviewed at a charge conference following the close of all evidence. The parties argued all changes, modifications, deletions, and corrections thereto, thus, the final jury instructions

and special verdict form were approved by both parties.

**4.** The court's instruction after question 4 read as follows:

If you answered YES to question 4 then answer question 5 and follow the instructions appearing after it. If you answered NO to question 4 please sign and date this form and inform the Court Security Officer waiting outside the jury room that you have reached a verdict.

available to Plaintiff pursuant to the hostile environment claim were not proper for jury determination and accordingly not submitted.

The Court is not bound by the advisory jury's determination of the pertinent issues in the case. *Wilson v. City of Aliceville,* 779 F.2d 631 (11th Cir.1986). However, after presiding over the five day trial, comprehensively examining all the evidence and exhibits properly introduced, observing all witnesses testifying thereto, reviewing the applicable law, examining all pertinent portions of the record, and being otherwise fully advised in the premises, the Court *independently agrees with* and as well hereby ACCEPTS, ADOPTS, RATIFIES, and APPROVES the jury's verdict and thereupon makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

## FINDINGS OF FACT

Plaintiff SUNDAY L. SANCHEZ,[5] is a female police officer employed by the City of Miami Beach. She was hired on April 26, 1982 and is still employed by the City of Miami Beach Police Department.

Defendant, CITY OF MIAMI BEACH ("City"), is an employer as defined in the pertinent provisions of Title VII, 42 U.S.C. § 2000e(b).

Plaintiff filed a complaint of sexual harassment against the defendant with the Dade County Fair Housing and Employment Appeals Board and the Equal Employment Opportunity Commission ("EEOC") on August 20, 1986. She received her notice of right to sue on September 11, 1987 and brought this action within ninety days of that notice.

The City employs approximately 300 law enforcement officers in its Police Department. The Department is headed by the Chief of Police and is organized into several divisions. The criminal investigations division and the patrol division employ the largest number of personnel. Plaintiff was assigned to the patrol division during the time period relevant to this action.[6]

*Hostile Environment*

The evidence adduced at trial, particularly the comprehensive exhibits, reveal that shortly after Plaintiff began her employment she became the subject of repeated, frequent and abusive sexual harassment. During the course of her employment, until the time of trial and even thereafter, the Police Department became the situs, or, more appropriately, a playground, for various incidents of sexual harassment directed at Plaintiff and other female members of the police force.

Specifically, Plaintiff was subjected to kissing, moaning, sighing and other disruptive noises transmitted over the police radio,[7] and was the subject of a plethora of sexually offensive posters, pictures, graffiti, and pinups placed on the walls throughout the Police Department. She received a soiled condom, a sanitary napkin, two vibrators, and a urinal device in her mailbox. She became the brunt of a demeaning public comment by the Mayor of Miami Beach,[8] and generally withstood innumerable childish, yet offensive sexual and obscene innuendoes and incidents aimed at her on the basis of sex.[9]

---

Having answered NO to question 4 the jury properly disregarded question 5 and went ahead to sign and date the Special Verdict form.

**5.** During the course of the litigation Plaintiff married and changed her name from Sunday L. Brown to Sunday L. Sanchez. *See* Court's Order dated March 7, 1989.

**6.** Shortly before trial, Plaintiff was promoted from Patrol Officer to Detective.

**7.** In addition to this conduct being puerile, the parties acknowledged that the disruption of radio transmissions could pose a significant danger to Plaintiff or other officers on patrol.

**8.** In 1986, the Mayor of Miami Beach, Alex Daoud, spoke at a Miami Beach City Commission Meeting. During the meeting he was informed that Plaintiff had won a gold medal at a corporate athletic fest. The commissioners then suggested that Sanchez receive a "key" to the City. Daoud responded, "The key to the City would be fine, but I'd like to give her a key to my apartment."

**9.** The posters and graffiti appearing throughout the police department accused Plaintiff, among other things, of being a lesbian, having male genitalia, and challenging male co-workers to various physical competitions. Also, many male officers within the Police Department

The aforementioned incidents permeated the department as the pictures and writings were found on bulletin boards, elevators, hallways, locked glass cases, and bathrooms. Quite often, Plaintiff was left to remove the debris as others (including the supervisory staff) would not.

At various times during her employ, Plaintiff had personal meetings with the Chief of Police, Kenneth Glassman, the Assistant Chief of Police, and various other management level officials to inform them of her complaints. The superior officers were told of the harassment directed towards Plaintiff and other female officers.

The pictures, posters, pinups, and related conduct of the police officers clearly indicates the lexicon of sexual discrimination currently pervading the City of Miami Beach Police Department. These incidents and the totality of the circumstances deriving therefrom have created a hostile, abusive, and offensive working environment in violation of Title VII of the Civil Rights Act of 1964. It is currently a practice, custom, and usage of the City of Miami Beach, through its Police Department and its officers, to allow a course of conduct which creates or maintains this hostile environment.

This Court finds that Plaintiff's emotional well-being was significantly and adversely affected within the workplace. Most female employees similarly situated would be and were offended, adversely affected psychologically, and hindered in their work.

Defendant does not deny that these incidents occurred substantially as related by Plaintiff, but does take exception to Plaintiff's characterization of some incidents as "sexually offensive" or "abusive."[10] Moreover, Defendant contends that Plaintiff somehow asked for and/or incited the conduct directed toward her. In support, Defendant referred to Plaintiff's involvement in bodybuilding and her concurrent use of steroids as the cause of an alleged change in physical condition and character. Additionally, Defendant cites Plaintiff's appearance on a local radio show during which she commented about her co-workers failure to "back her up" on the street and their failure to eat and socialize with her. Consequently, Defendant asserts that the harassment, although sexual in nature, was not directed at her because of her sex, rather because of the steroid use and/or the radio appearance.

The Court disagrees. It cannot reasonably be argued that the type and amount of abuse directed toward Plaintiff was the result of a brief period of steroid use or one appearance on a radio talk show.[11] Plaintiff's testimony and the related exhibits are highly credible. Consistent with this evaluation, the Court again independently agrees with the jury and deems the incidents complained of by Plaintiff to be sexually offensive and abuse, *and* directed towards her and other female members of the Department because of their sex.

The Court recognizes that supervisors cannot take contemporaneous action to curtail conduct if without knowledge of the problem. This simply was not the case; the City had both actual and constructive knowledge. Through meetings held between Plaintiff and her supervisors, the

---

were predisposed to refer to female officers or personnel in a quite derogatory and demeaning manner, for example as "cunts," "douche bags," and "broads." Moreover, on many occasions various pictures from *Playboy, Penthouse,* and other publications were posted in the station.

**10.** Indeed, a number of witnesses, particularly current police officers, diametrically opposed Plaintiff's testimony concerning the exhibits' sexual offensiveness and referred to the various exhibits (posters, pictures, etc.) as "funny" or as "jokes."

**11.** Admittedly, the accusations made by Plaintiff on the radio show are serious and could provide

a basis for some disharmony amongst members of the Department. As we must trust the police, the police must trust each other for support and defense. This duty is not taken lightly among them; thus, any remark made in contravention thereof is a serious charge sure to cause some anger. That anger, however, simply does not comport with the frequency, type, and severity of the harassment confronting Plaintiff. Likewise, Plaintiff admitted steriod use to assist her bodybuilding. Again, although the use of steroids cannot be condoned, it is quite different to proffer that any circumstances resulting therefrom caused the type and severity of harassment present here. Accordingly, the defenses raised by the Defendant are unacceptable.

City, through appropriate management officials, was put on notice as to the hostile work environment within the Police Department.

Further supporting this finding is evidence that the City published an "Harassment Policy" in 1986. The Policy stated that sexual, ethnic, racial and religious harassment was an offense first against the Police Department, and second, an offense against any specific employee or group of employees.[12] It was the Department's position to take affirmative action to prevent such unwarranted conduct, and to deal with all such reported incidents in a fair, impartial, and speedy manner. The Harassment Policy further provided that all persons who violated the policy would be subjected to disciplinary procedures. It further stated that every supervisor's responsibility was to prevent such behavior from occurring within their work jurisdiction. Additionally, late in 1986 the City issued a Personnel Memorandum stating that it was against the City's policy for any employee to harass another employee by engaging in unwanted conduct of a racial, religious, ethnic, or sexual nature; violation of this policy would subject the offending employees to disciplinary action, up to and including termination. According to those statements of policy, immediate action was to be taken to remedy the situation and to prevent the recurrence of any violations.

Although politically expedient, the City's harassment policy simply fails. First, the substantive policy is insufficient and inadequate to address competently this complex societal problem.[13] Second, and more important, the City has paid mere lip service to its enforcement. No meaningful steps were taken either to disseminate the policy or to cause instruction regarding its purpose, terms, and objectives. The policy was simply never enforced and no disciplinary action was taken. As a result, the Harassment Policy and subsequent memorandum *did not* prevent the sexual harassment, sexual comments, insults, and other offensive mannerisms from continuing throughout the Police Department and in particular from being aimed at Plaintiff.

Sexual harassment and a hostile and offensive work environment still exist within the City of Miami Beach Police Department.

*Disparate Treatment*

Plaintiff claims in Count II of her complaint that she applied for various positions in the Police Department and was wrongfully denied the positions or a change of duty status. As a result, she alleges she was subjected to disparate treatment, not allowed equal employment opportunities available to co-workers, and was otherwise discriminated against by the Defendants because of her sex. The Jury found to the contrary. Again, the Court independently agrees.

Plaintiff did apply for various training courses and was denied admission. However, the evidence clearly indicates that Plaintiff received no more favorable or unfavorable treatment in the acceptance or denial of her applications than other female or male officer/applicants. Considering the totality of the circumstances, Plaintiff has failed to show by a preponderance of the evidence any disparate or unequal treatment.

---

**12.** One cannot help but note that perhaps the Department's priorities as enunciated within the Policy are askew.

**13.** A recent report maintains that nearly 50% percent of working women and about 15% percent of working men are sexually harassed on the job. *See Lipsett v. University of Puerto Rico,* 864 F.2d 881, 898 n. 19 (1st Cir.1988) (citations omitted). Thus, it should be undisputed that a serious problem exists within the City of Miami Beach Police Department. Defendant contends, however, that the incidents and atmosphere under review here are dwarfed by the inherent dangers of police work. Defendant consequently argues that the harassment is a direct result of the stress and tension normally affecting police officers and therefore should be overlooked, or at worst, taken in appropriate context. The Court fully recognizes and respects the inherent dangers in police work but will not condone violations of law. Individuals working to remedy violations of law should not commit them, nor should they seek to justify their commission.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e–5(f).

Plaintiff has satisfied all conditions precedent and properly brings this action. The Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

Plaintiff has sued the City alleging a violation of Title VII of the Civil Rights Act of 1964 ("Title VII" or "Act"), claiming that her employer has permitted a sexually hostile and offensive work environment and has additionally subjected her to disparate treatment based on her sex concerning advancement and training opportunities. The relevant statutory provision, 42 U.S.C. § 2000e–2, provides:

(a) Employer practices

It shall be an unlawful employment practice for an employer—

(1) ... to discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's ... sex ...;

Plaintiff first asserts that she was the victim of sexual harassment, a form of sex discrimination prohibited by Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In *Meritor*, the Supreme Court, dealing primarily with hostile environment sexual harassment claims, recognized that liability can be based on the grant or denial of an economic benefit linked to "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Id.* at 65, 106 S.Ct. at 2404. The court cited with approval the EEOC guidelines defining sexual harassment and outlining the possible bases of liability for conduct constituting sexual harassment. *Id.; see* 29 C.F.R. § 1064.11.

Consistent with *Meritor*, courts have generally recognized two forms of sexual harassment: (1) *quid pro quo* sexual harassment; and (2) hostile work environment sexual harassment. *See, e.g., Henson v. City of Dundee*, 682 F.2d 897, 908 n. 18, 910 (11th Cir.1982). *Quid pro quo* sexual harassment occurs when an employer alters an employee's job condition as a result of the employee's refusal to submit to sexual demands. *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404–05; *Henson*, 682 F.2d at 908. Hostile environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive environment." *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404–05; *Henson*, 682 F.2d at 904.

### Hostile Environment

■ In this case, the plaintiff alleges only the hostile environment form of sexual harassment. To establish a violation of Title VII, plaintiff has the ultimate burden to prove that the discrimination based on sex has created a hostile or abusive work environment. *Meritor*, 477 U.S. at 66, 106 S.Ct. at 2405; *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir.1987). To establish a prima facie case under this theory the plaintiff must prove that:

(1) she is a member of a protected group;

(2) she was the subject of unwelcome sexual harassment;

(3) the harassment occurred because of her sex;

(4) the harassment affected a term, condition, or privilege of her employment; and

(5) the employer knew or should have known of the harassment and failed to take remedial action.

*Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir.1988); *Henson*, 682 F.2d at 903–05.

■ The employer may rebut the prima facie showing by establishing that the events did not take place, or were not sufficiently severe to be actionable, or by pointing to prompt remedial action reasonably calculated to end the harassment. *Katz v. Dole*, 709 F.2d 251, 255–56 (4th Cir.1983).

■ The parties agree on the first two elements outlined in *Huddleston*: first, Plaintiff is a part of a protected group (women), and second, she was made subject to "unwelcome" sexual harassment since it

was obviously undesirable or offensive to Plaintiff. Despite Defendant's contentions to the contrary regarding the third element, the harassment complained of was based upon sex, i.e. that but for the fact of her sex, the plaintiff would not have been the object of harassment.

With respect to the severity of the harm, Plaintiff may have an actionable claim if the sexual harassment was sufficiently severe and persistent to affect seriously the psychological well-being of the Plaintiff or her fellow employees. *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982). As explained in *Henson* and other cases, this determination is to be made with regard to the "totality of the circumstances." *Id.* Accordingly, a proper assessment of the employment environment invites consideration of "such objective and subjective factors as the nature of the alleged harassment, the background and experience of the plaintiff, the totality of the physical environment of the plaintiff's work area, [and] the lexicon of obscenity that pervaded the environment of the workplace...." *Id.*

Although the jury and the court independently conclude that the Plaintiff did not suffer any tangible job detriment,[14] such a finding does not in itself preclude a hostile work environment claim. This case is an example. The harassment present within the City of Miami Beach Police Department was so pervasive and destructive of the working conditions that a reasonable female employee would have been adversely affected if exposed to this environment. The harassment was wide in scope (occurring in and out of the police station), long in duration (seven years of Plaintiff's employment), and without question, abusive and offensive in nature. Accordingly, Plaintiff has sufficiently shown that her psychological well-being was adversely affected to a degree necessary to state a claim under Title VII.

Regarding employer liability, Plaintiff has the burden of showing that the employer knew or should have known of the alleged harassment but failed to take remedi-

al action. The Plaintiff can demonstrate that the employer knew of the harassment by showing that she complained to higher management of the harassment, or by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge. *Henson*, 682 F.2d at 905; *Bundy v. Jackson*, 641 F.2d 934, 936 (D.C.Cir.1981). Here, Plaintiff has clearly and definitively shown that she provided actual notice of the harassment to Chief of Police and his upper-level management through various complaints and meetings. Even if the Court were to *hypothetically* discredit the meetings and/or complaints Plaintiff testified to, knowledge would be constructively imputed to the Defendant due to the pervasiveness of the harassment.

Finally, if a plaintiff proves an employer has knowledge of the harassment and environment, as is the case here, an employer may still avoid liability under the Act by showing that once it learned of the offending conduct it took appropriate remedial action. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311 (11th Cir.1989); *Henson*, 682 F.2d at 910 n. 20. The actions taken by the employer must be "reasonably calculated to end the harassment," *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983), and the promptness and adequacy of the employer's response must be evaluated on a case-by-case basis. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 621 (6th Cir. 1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Of special importance is whether the sexual harassment ended after the remedial action was taken. *Steele*, 867 F.2d at 1316.

In this case, the City did formulate a sexual harassment policy in 1986. However, progress toward appropriate remedial action began and ended with its issuance. The mere existence of a grievance procedure and a policy against discrimination does not insulate the City from liability. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). Moreover, the Court critically

---

**14.** As noted *supra,* Plaintiff has failed to show disparate treatment concerning training and ad-

vancement allegedly denied her on the basis of her sex.

views the City's proffered efforts to educate its department and implement the policy. Simply put, there has been no meaningful action taken under the policy since its inception. Surely, form over substance cannot suffice to vitiate liability under Title VII.

Taking all into account, the Court has found the elements necessary to support a prima facie case in favor of Plaintiff. Having found no meritorious defenses acceptable for Defendant, the Court concludes that Plaintiff has successfully brought a claim for sex discrimination based on a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964.

*Disparate Treatment*

■ Plaintiff also claims that intentional discrimination based on sex was responsible for denying her certain advancement and training opportunities within the Police Department.

The rules concerning order and allocation of proof outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), apply to this disparate treatment claim of intentional sex-based discrimination. Applying these rules to the instant case and all the facts and circumstances presented therein, Plaintiff has failed to bring a successful claim.

## PERMANENT INJUNCTION

■ Having found in favor Plaintiff on the hostile environment claim, the Court must examine all available remedies. Courts have discretion under Title VII to award a victorious plaintiff back-pay, reinstatement, and "any equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g) (1976). Injunctive relief generally should be granted in Title VII cases unless there is no reasonable expectation that the discriminatory conduct will recur, *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), or if interim events have "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v.*

*Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). There is no indication that either of these situations exist. Thus, this Court finds it appropriate to impose injunctive relief.

This Court hereby ORDERS AND DIRECTS that the Defendant City of Miami Beach, its officers, successors, agents, employees, servants, and all those subject to its control or acting in concert with Defendant, are hereby ENJOINED from continuing or maintaining any policy, custom, practice, or usage which creates or maintains sexual harassment within the City of Miami Beach Police Department: to wit, any unwelcome sexual advances, requests for sexual favors, or other conduct herein described or related thereto which interferes with an individual's work performance or creates an intimidating or hostile or offensive work environment.

The Court further ORDERS AND DIRECTS the City of Miami Beach to design anew or re-formulate and thereafter stringently implement a comprehensive system to safeguard against all kinds of discriminatory conduct. The preventive system which the City implements should conform with the EEOC Guidelines on Sexual Harassment, 29 C.F.R. § 1604.11(a)–(f). Defendant should be particularly mindful of incorporating within the preventive system a means of educating employees as to their right to a work environment free of discriminatory conduct and sexual abuse; a means for employees to make an intra-office complaints regarding violations of Title VII; and a means for promptly and effectively dealing with these complaints which holds all persons responsible to a degree commensurate with their illegal conduct.

## ATTORNEY'S FEES AND COSTS

■ The Court may also award attorney's fees to Plaintiff if she is a "prevailing party" under 42 U.S.C. § 2000e–5(k). *Jean v. Nelson,* 863 F.2d 759, 765 (11th Cir.1988). Until recently, the prevailing party test was "whether he or she has received substantially the relief requested or has been successful on the *central issue,* or, stated another way, whether plaintiffs' lawsuit was a catalyst motivating defendants to

provide the primary relief sought in a manner desired by litigation. *Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985) (en banc) (emphasis added) (citations omitted). The Eleventh and Fifth Circuit Courts of Appeals were the only two circuits requiring that a party succeed on the "central issue" in the litigation and achieve the "primary relief sought" to be eligible for an award of attorney's fees under § 1988. *See e.g., Martin v. Heckler*, 773 F.2d 1145, (11th Cir.1985); *Simien v. San Antonio*, 809 F.2d 255 (5th Cir.1987). On the other hand, most federal courts have applied a *less* demanding standard, requiring only that a party succeed on a *significant* issue and receive some of the relief sought in the lawsuit. *See e.g. Lampher v. Zagel*, 755 F.2d 99 (7th Cir.1985); *Nephew v. Aurora*, 766 F.2d 1464, 1466 (10th Cir.1985).

Recognizing a split amongst the circuits and the importance of the definition of the term "prevailing party" to the application of § 1988 and other federal fee-shifting statutes, the Supreme Court recently disagreed with and modified the Eleventh and Fifth Circuits' standard in *Texas State Teachers Assoc. v. Garland Indep. School Dist.*, —— U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). The Court stated:

> If the plaintiff has succeeded on "any significant issue in the litigation which achieved some of the benefit the parties sought in bringing the suit" the plaintiff has crossed the threshold to a fee award of some kind.... Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988 the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.... Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that even the "generous formulation" we adopt today has not been satisfied.... The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

*Id.* 109 S.Ct. at 1493 (emphasis in original, citations omitted).

With or without the benefit of this new and less stringent standard, the court easily finds Plaintiff to be a "prevailing party." Plaintiff succeeded on the *central* issue in the suit, establishing that there exists a hostile work environment in violation of the Civil Rights Act of 1984. Plaintiff has furthermore obtained the primary relief sought, an injunction framed to vitiate the existing violation of law within the City of Miami Beach Police Department. In assessing attorney's fees, the Court will consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) and the procedures espoused in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988).

Plaintiff's attorney SHALL submit affidavits, supported by time sheets, and other appropriate support in connection with the prosecution of this case which itemize the number of hours spent on particular matters in this case by September 11, 1989. Defendant shall file any affidavits or other papers in opposition thereto on or before September 25, 1989. If needed, the Court shall hold an evidentiary hearing on this issue.

Plaintiff is also entitled to COSTS in this action. Said costs shall be taxed by the Clerk of Court upon the filing of an appropriate bill of costs form.

DONE AND ORDERED.