SCHWARTZ, ALAN R., Associate Judge
(dissenting).
Blackburn was a sales agent employed by John Hancock when she was the subject of an egregious sexual attack by one of her supervisors.[1] She reported the incident to higher-ups in the company, but they conducted only a bad-faith investigation[2] which resulted in a factually incorrect finding that the charges were unfounded, and thus, in effect, that Blackburn had fabricated them. In my view, this scenario established, as a matter of law, that John Hancock had committed an act of sex discrimination against Ms. Blackburij in violation of Section 760.10(1)(a), Florida Statutes (1987).[3] I therefore dissent from the af-firmance of a final order dismissing her complaint.[4]
It seems clear to me that conducting a bad-faith inquiry into a valid complaint of sexual harassment fails completely to satisfy the recognized duty of an employer to take prompt and effective remedial action to correct and condemn such an act. College-Town, Div. of Interco, Inc., v. Massachusetts Comm’n Against Discrimina *507 tion, 400 Mass. 156, 166, 508 N.E.2d 587, 593 (1987) (“employer is liable for sexual harassment in the work place if the employer is notified of the condition and fails to take adequate steps to remedy the situation”); Wattman v. International Paper Co., 875 F.2d 468, 479 (5th Cir.1989) (“employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer’s response was not ‘reasonably calculated’ to halt the harassment”); Garziano v. E. I. Du Pont De Nemours & Co., 818 F.2d 380, 388 (5th Cir.1987) (“employers have an affirmative duty to eradicate hostile or offensive work environments”); Bundy v. Jackson, 641 F.2d 934, 947 (D.C.Cir.1981) (“[an employer] should promptly take all necessary steps to investigate and correct any harassment, including warnings and appropriate discipline”); Tomkins v. Public Serv. Elec. & Gas Co., 568 F.2d 1044, 1048-49 (3d Cir.1977) (“Title VII is violated ... [if] if the employer does not take prompt and appropriate remedial action after acquiring ... knowledge [of the harassment].”); Llewellyn v. Celanese Corp., 693 F.Supp. 369, 377 (W.D.N.C.1988) (“unless supervisory personnel take effective remedial action reasonably calculated to end the harassment, they are in passive complicity with the harassment”); see Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir.1982) (“Where, as here, the plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff’s supervisor or coworker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.”); Sanchez v. City of Miami Beach, 720 F.Supp. 974, 982 (S.D.Fla.1989) (where no meaningful remedial action taken, no vitiation of liability under Title VII); Robson v. Eva’s Super Market, Inc., 538 F.Supp. 857, 863 (N.D.Ohio 1982) (“an employer or supervisor may be held liable for employment discrimination where [he or she] acquiesces or condones unlawful acts practiced by subordinates”); Heelan v. Johns-Manville Corp., 451 F.Supp. 1382, 1390 (D.Colo.1978) (“If employer fails to respond to a valid complaint, it effectively condones illegal act.”).
In these circumstances, John Hancock is guilty of sex discrimination on two separate, although interrelated, theories:
1. There is no doubt that the supervisor’s acts were so extreme that they created, in themselves, a “hostile work environment” within the meaning of the act.[5] See Barrett v. Omaha Nat’l Bank, 726 F.2d 424 (8th Cir.1984).[6] While John Hancock may not have been initially liable for that conduct under the ordinary agency principles which are applicable to these questions, see Meritor Savings Bank, F.S.B. v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the result of its biased investigation was to condone and confirm it. Thus, its vicarious responsibility for the attack itself was established under the familiar doctrine of ratification.[7] *508 Restatement (Second) of Agency § 91 comment e (1984); 3 Am.Jur.2d Agency § 190, at 691 (1986)[8]; see DeBoard v. Schulhofer, 156 Ga.App. 158, 273 S.E.2d 907 (1980); Perkins v. Rich, 11 Mass.App. 317, 415 N.E.2d 895 (1981), aff’d, 385 Mass. 1001, 429 N.E.2d 1135 (1982); cf. Oxford Lake Line v. First Nat’l Bank, 40 Fla. 349, 24 So. 480 (1898).
Second, and more important, the conduct of a bad-faith inquiry into a harassment complaint — which is deemed in “bad-faith” just because it was conducted with an unfair predisposition toward the male attacker and against the female victim — is, also almost by definition, itself the very epitome of an act of “discrimination” on the basis of “sex.” In my view, there is nothing more profoundly discriminatory than to adopt and effect what I had believed and hoped was the discarded notion that female complaints of sexual abuse are somehow inherently suspect or insignificant or both. See Marr v. State, 494 So.2d 1139 (Fla.1986); Center for Women Policy Studies, Harassment & Discrimination of Women in Employment (1981) (Conference on Harassment in the Work Place); Major, Gender, Justice, & the Psychology of Entitlement, in Sex & Gender 124-45 (1987); M. Myer, I. Berchtold, J. Oestreich, & F. Collins, Sexual Harassment 77 (1981); C.A. MacKinnon, Sexual Harassment of Working Women 48-49 (1979).[9]
For these reasons, I would reverse the order below and remand for an award of appropriate relief in the appellant’s favor.

. The hearing officer held as follows on this point:
After the last call, they returned to the parking lot where Mr. Gentile had left his car. While still in Petitioner’s car, Mr. Gentile tried to unbutton her blouse. He grabbed her head and tried to shove it into his lap. He then exposed his penis to her. Petitioner rejected all of his advances, and he finally left her car.

. The findings of the hearing officer on bad-faith are:
Respondent’s investigation was deficient in several respects and not conducted in good faith. Mr. Stathis, who exhibits a "take charge," confrontational attitude, undoubtedly intimidated Petitioner, who is shy and was, at the time, inexperienced and somewhat naive. When Mr. Stathis bullied Petitioner into scheduling an appointment on short notice, he explicitly told her that her needs were subordinate to those of Respondent and, in light of his pressing vacation plans, even Mr. Stathis. Mr. Stathis disingenuously cited Petitioner’s uncooperativeness as a prime reason for closing the investigation and concluding that her charges were unfounded.

. 760.10 Unlawful employment practices; remedies; construction.
(1) It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status, [e.s.]

. Ms. Blackburn does not challenge the hearing officer's finding, affirmed by the Commission, that she left John Hancock for reasons unrelated to the incident or investigation and is thus not entitled to reinstatement or back pay, the appropriate remedies for a discriminatory discharge. On this appeal, she claims only the rights to nominal damages, costs, attorney’s fees, and if appropriate, a cease and desist order, all of which are awardable when back pay is unavailable. Huddleston v. Roger Dean Chevrolet, 845 F.2d 900 (11th Cir.1988); Garner v. Wal-Mart Stores, 807 F.2d 1536 (11th Cir.1987); Henson v. City of Dundee, 682 F.2d 897 (11th Cir.1982).

.On this issue, I agree with the Commission, which found:
The hearing officer concludes, albeit by implication only, that no hostile environment existed. In the last sentence of paragraph 13, the hearing officer states, "The courts have not recognized that a single incident, however egregious, itself may generate a HWE.” Then in the first sentence of paragraph 14, the hearing officer states, "Even if Petitioner were able to prove the June 12th incident was sufficiently abusive, hostile or offensive to satisfy the fourth HWE element,_" The' occurrence of a single incident does not preclude a finding that a work environment was hostile. An egregious incident, such as the one described in the findings of fact, does create a hostile environment. For example, in Barrett v. Omaha National Bank, 726 F.2d 424 (8th Cir.1984), the court held that one incident constituted actionable sexual harassment. The harasser talked to the plaintiff about sexual activities and touched her in an offensive manner while they were inside an automobile from which she could not escape. See also, Gilardi v. Schroeder, 833 F.2d 1226 (7th Cir.1987).

. The facts of Barrett are very similar to this case with the decisive exception that the employer conducted an effective investigation, found that the alleged act had been committed, and duly disciplined the offenders.

. The hearing officer found that:
[t]he investigation was poorly planned and executed. Respondent may find no solace in its transparent effort to satisfy one require *508 ment of Title VII case law in a procedure that, by design or reasonably foreseeable effect, discourages the complainant from full and active participation in the process.

. [WJhere ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable person upon inquiry, he may be held to have ratified despite lack of full knowledge. Thus, it has been stated that the general rule that in order for ratification to bind the principal he must have been shown to have had full knowledge of the material facts relating to the unauthorized transaction does not apply if the principal intentionally assumed the responsibility without inquiring, or deliberately ratified, having all the knowledge in respect to the act which he cared to have.

. Those who complain, as well as those who do not, express fears that their complaints will be ignored, will not be believed, that they instead will be blamed, that they will be considered "unprofessional."
C.A. MacKinnon, supra, at 49.
When a female employee registers a complaint and the grievance is not only not adequately processed, but the complainant is persecuted for having the temerity to advance it at all, the Act is violated to the extent that [the complaint] is sex-based.
Tomkins v. Public Service Electric & Gas Co., 422 F.Supp. 553, 557 (D.NJ.1976), rev’d, 568 F.2d 1044 (3d Cir.1977).