**Almus WILSON, Plaintiff-Appellant,**

v.

**CITY OF ALICEVILLE,
Defendant-Appellee.**

No. 85–7089.

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1986.

Joseph L. Boohaker, Birmingham, Ala., for plaintiff-appellant.

John D. Gleissner, Davies, Williams & Wallace, Birmingham, Ala., John A. Russell, III, Aliceville, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Appellant Almus Wilson, a black male, sought injunctive and declaratory relief, back pay and punitive damages under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §§ 1981 and 1983 against appellee, City of Aliceville, Alabama, alleging that the City refused to hire him as a police officer or chief of police on account of his race.

## I. STATEMENT OF THE CASE

Appellant Almus Wilson appeals the district court affirmance of an advisory jury verdict in favor of the City of Aliceville on his Title VII claim.

Appellant served in Aliceville's Police Department from July 1979 to November 15, 1979. He was dismissed, however, when it was discovered that he had pled guilty to a misdemeanor offense in Montgomery of assault on a police officer. This conviction apparently prevented Wilson from attending the police academy and otherwise qualifying as a law enforcement officer under the Alabama Peace Officers Minimum Standards Act.

Wilson subsequently obtained a pardon from the Mayor of Montgomery. He thereafter attended and graduated from the police academy on February 13, 1981, becoming certified as a police officer upon graduation.

From October 16, 1981 to June or July of 1982 Wilson was a police officer in Akron, Alabama, and for a while served as acting chief of police. On December 30, 1982 he was hired by the Greene County Sheriff's Department as a deputy sheriff where he was employed at the time of trial.

In August of 1981, the City of Aliceville began advertising for the position of chief

of police. The city sought candidates who had completed police academy training and who had been certified as law enforcement officers. Appellant Wilson hand delivered his application to Mayor Hook's residence. Wilson, dressed in tennis attire, met with the mayor for approximately two hours. The parties disagree on exactly what was said at this meeting and on whether the meeting could properly be termed a "job interview." According to appellant, the mayor told him that he was too smart and over-qualified for such a small town. In appellee's version, Wilson is indeed depicted as too smart, though by half, as this version has the mayor describing Wilson as "a little on the smart aleck side."

Appellee claims that Wilson subsequently called the mayor and admitted to not being police chief quality. Appellant, however, denies having done this.

Appellant later reapplied for the position as chief of police. He also applied for the position of police officer on July 19, 1982. According to appellant, several white males less qualified than he were hired as police officers. At the time of appellant's application, the City of Aliceville had two black and two white police officers and a white police chief.

Appellant filed suit on October 22, 1982. At trial, appellant sought to introduce as direct evidence of discrimination a statement signed by Nina Maudine Goodman a/k/a Maudine Goodman, in which she stated: "I Maudine Goodman swear that I heard [Mayor] Roth Hook make the statement to another man, that he wasn't gonna let no Federal government make him hire no god-dam nigger."

The court sustained appellee's objection to the introduction of the statement. Appellant then sought to have Ms. Goodman testify as to what she heard. Appellee sought to interpose an objection out of the presence of the jury. Again, the court sustained appellee's objection.

Out of the presence of the jury, appellee objected to the statement on the grounds that: (1) it was too indefinite since the witness failed to state the date on which she heard the statement; (2) that the witness was not a party to the conversation and did not know who other than the mayor was present; and (3) that the statement was highly inflammatory and prejudicial and would take the jury's mind off the key issue in the case, that is, consideration of appellant's application.

The court then allowed Ms. Goodman to testify out of the presence of the jury. On the stand she stated, "Well, all I heard Mr. Hook say was, 'I don't believe that the federal government will make me hire a negro.'" Thereafter, the court sustained appellee's objection to the introduction of the statement pursuant to Federal Rule of Evidence 403, and sustained the objection to Ms. Goodman's testifying before the jury on the ground that her testimony was completely ambiguous and did not prove anything, as it could have been either an expression of confidence in winning the present suit or an expression of defiance.

The case was tried to an advisory jury which rendered a verdict in favor of the City of Aliceville. After the trial court entered judgment on the advisory jury's verdict, appellant Wilson moved for a j.n. o.v. and a post-trial motion for assignment of equitable remedies. The district court denied both motions and in a memorandum opinion affirming the jury verdict held (1) that appellant failed to establish a prima facie case as is required in disparate treatment Title VII cases because he was not qualified to be police chief or a police officer for the City of Aliceville; and (2) that even if appellant had established a prima facie case appellee had met its burden of articulating legitimate reasons for not hiring (or rehiring) appellant.

## DISCUSSION

Appellant argues that the district court committed reversible error in not considering as direct evidence of discrimination the testimony and prior signed statement of Nina Maudine Goodman a/k/a Maudine Goodman. Because of the reasons discussed below, we agree with appellant, and

therefore reverse the judgment of the trial court.

■ A plaintiff bringing a Title VII disparate treatment claim has a more difficult path when he can point to no direct evidence of discrimination. To prevail, he must first establish a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1818, 36 L.Ed.2d 668 (1973). He can satisfy this burden by showing: (i) that he belonged to a racial minority, (ii) that he applied for a job for which the employer was seeking applicants, (iii) that despite his qualification he was rejected, and (iv) that after his rejection the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824.

■ To meet this prima facie case of discrimination, the defendant must articulate, but need not prove, legitimate, nondiscriminatory reasons for not hiring plaintiff. *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The plaintiff then carries the burden of proving that the articulated reasons were mere pretext. *Id.* at 256, 101 S.Ct. at 1095. If plaintiff falls short in carrying this burden, so too falls his Title VII claim.

■ Where, however, there is direct evidence of discrimination the *McDonnell Douglas* analysis is inapplicable. *Miles v. M.N.C. Corp.,* 750 F.2d 867, 875 (11th Cir. 1985); *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir.1983); *Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir.1982). A defendant presented with direct evidence of discrimination can rebut the presumption that the hiring decision was improperly motivated only by proving by a preponderance of the evidence that the same decision would have been reached even absent the impermissible factor. *Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir. 1982) (citing *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Direct evidence of discrimination cannot be met by a *McDonnell Douglas* rebuttal, *Lee v. Russell County Board of Education,* at 776, such as was presented by the defendants here. It thus becomes apparent that appellant's chances of prevailing on appeal turn on the existence of direct evidence of discrimination. We turn now to consider what appellant argues is direct evidence. Appellant lost this important battle below, as the district court found no direct evidence of discrimination, and thus applied the *McDonnell Douglas* analysis.

### Prior Written Statement

■ The district court refused to admit into evidence a statement signed by Maudine Goodman to the effect that: "I Maudine Goodman swear that I heard [Mayor] Roth Hook make the statement to another man, that he wasn't gonna let no Federal government make him hire no god-dam nigger." Had the court admitted this statement into evidence, the jury might well have considered it direct evidence of discrimination. Indeed, we find the racial slur attributed to the Mayor highly probative evidence of illegal discrimination. We find direct support for our conclusion in our recent case of *Miles v. M.N.C. Corp.,* 750 F.2d 867, 873–76 (11th Cir.1985), where we held that a racial slur made by a person in charge of making employee evaluations and suggestions for rehiring constitutes direct evidence of discrimination.[1] *Cf. Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1557 (11th Cir.1983) (in a sex discrimination case, statement by superior that he would not put plaintiff in the washroom because if he did "every woman in the plant would want to go into the washroom"

---

1. The racial slur was made in the context of an inquiry as to why the defendant company had no black employees. A supervisory employee responded, "Half of them weren't worth a shit." *Id.* at 874.

is highly probative evidence of illegal discrimination.)

The probative value of Ms. Goodman's written statement was apparent to the district court the day before trial on October 24, 1984. In chambers, the court noted that the statement was highly probative of racial discrimination and therefore overruled appellee's objection to its admission.

Addressing the admissibility of the statement, the court concluded:

> It is admissible on what his attitude was when he turned him down. Presumably, people don't pick up a racially prejudiced attitude overnight. The jury is entitled to consider that later than 1982, he was referring to the plaintiff as a "goddam nigger." He felt that way about him when he wouldn't hire him. It's a jury question. And it's not too remote. In fact, I think I would have to oblige myself to human nature to agree with you.

> If the man is prejudiced in late 1982, it's almost certain he was in early 1982. Now, if he was unprejudiced in late 1982, he might have learned something in the meantime. But people don't usually pick up racial prejudice overnight.

> And if they have got it in late 1982, it is almost certain they had it in early 1982. At least the jury can so consider, and they have the right to consider it in the light of human experience. And that has been my human experience.

Although on October 24, 1984 the court thought the statement highly probative of discrimination, the following day it refused to admit the statement into evidence, relying on Federal Rule of Evidence 403.[2]

Not infrequently, we have held that Rule 403 exclusion should be used sparingly. *Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir.1985); *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 722–33 (11th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983); *Collins v. Seaboard Coast Line Railroad Co.*, 675 F.2d 1185, 1189 (11th Cir.1982). In the context of this Title VII case, as is often true in civil cases, what is prejudicial to the defendant is beneficial to the plaintiff. Here, the statement, if accepted as credible, could have gone a long way towards proving plaintiff's claim of illegal discrimination on the basis of race. The court's failure to admit this highly probative evidence for consideration by the jury would be firm grounds for reversal if this case were tried to a regular jury.

■ This case, however, was tried to an advisory rather than a regular jury. Federal Rule of Civil Procedure 39(c) allows a party to have a trial by jury although he is not entitled to one as a matter of right. Since Title VII case are entirely in equity there is no right to a jury trial, even when the claimant seeks back pay. *Sullivan v. School Board of Pinelles County*, 773 F.2d 1182 (11th Cir.1985), citing *Harkless v. Sweeny Independent School District*, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969). When a trial court sits with the aid of a jury in a Title VII case, the jury is advisory only, unless both parties consent to make the jury's verdict binding.[3]

■ As its name suggests, an advisory jury merely advises. Its findings of fact

---

**2.** We note that the district court improperly applied Rule 403. According to the court, evidence is excluded under Rule 403 if it does not have more beneficial value than potential for harm. Evidence should be excluded under Rule 403 only when its probative value is substantially outweighed by its potential for prejudice.

When the balance is even the evidence should be admitted.

**3.** Under FRCP 39(c), with the consent of both parties, the court may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

are not binding on the trial court. Indeed, the court is free to adopt its findings in whole or in part or to disregard them altogether. *Sheila Shine Products, Inc. v. Sheila's Shine, Inc.,* 486 F.2d 114, 122 (5th Cir.1973). The ultimate responsibility for finding the facts remains with the court. Wright, *Federal Courts,* § 92 at 56 (3d ed. 1976). Accordingly, review on appeal is from the judgment of the court as though no jury had been present. 5 Moore's Federal Practice, § 39–40 (2d ed. 1985).

▮ Given the nature of an advisory jury, the question thus narrows down to whether the trial court's failure to treat the statement as direct evidence of discrimination was clearly erroneous. We think that it was. We do not believe that the trial court, the ultimate trier of fact here, adequately considered the prior written statement.

To begin with, the court refused to admit the statement into evidence, which is a strong indicator that the court gave no consideration to its probative value on the ultimate issue of whether Wilson was denied employment by reason of his race. What the court found on October 24, 1984 to be highly probative of racial discrimination had somehow become on October 25, 1984 so disemboweled of its probative value as to warrant total consideration by the jury.[4] Our close review of the record reveals neither explanation nor justification for this dramatic turnaround. Further, there is insufficient evidence in the record from which we can determine whether the court itself considered this statement which it withheld from the jury. The court seems to have treated Ms. Goodman's apparent disavowal as cancelling her written statement. Such is not the effect of a disavowal. After a witness disavows a statement, the trier of fact must determine which is more credible, the former or the present version of the witness' statement.

Indeed, under Federal Rule of Evidence 801(d)(1)(A) prior inconsistent statements are not hearsay and are admissible as substantive evidence if given under oath or subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.[5] Statements not falling within these boundaries can be used for impeachment under Rule 607, although they are not admissible as substantive evidence.

To the extent that the court did consider the statement, we believe that its interpretation of the statement as ambiguous or as an expression of confidence in winning the suit is clearly erroneous. We find the statement to be an unambiguous racial slur, just as the trial court found it to be the day before trial. We also agree with the statement made by the trial court on the eve of trial that Ms. Goodman's statement is highly probative on the issue of racial discrimination because if the Mayor was prejudiced when he made the statement in late 1982 it is "almost certain he was in early 1982" when appellant's application for employment was denied.

*Witness' Testimony*

▮ In addition to excluding the written statement from evidence, the court refused to allow Maudine Goodman to testify before the jury. According to the court, her testimony, given out of the presence of the jury, was too ambiguous. If this were a case tried to a regular jury we would find additional grounds for reversal in the trial court's refusal to allow Ms. Goodman to testify before the jury. It is so plain that it almost goes without saying that whether a witness' testimony goes one way or the other is a determination to be made by the jury.

With an advisory jury, however, the question becomes whether the trial court,

---

**4.** The court initially sustained the objection to admission of the statement even before the witness' apparent disavowal of it.

**5.** Here it is unclear whether Maudine Goodman's prior statement was made at a deposition

to bring it within the ambit of Rule 801(d)(1)(A). Neither the trial court nor the opposing party objected to its admission on the basis of its being hearsay.

rather than the jury, had the witness' testimony before it, as it is the trial court who is the trier of fact.

Here, Maudine Goodman testified out of the presence of the jury that the Mayor said: "I don't believe that the federal government will make me hire a negro." At this point appellant sought to introduce the prior written statement by way of surprise, but was dissuaded by the court's comment, "You can impeach your own witness, but when you get through impeaching her, what have you done?"

After stating several times that Ms. Goodman's statement did not tend to prove anything, the court concluded: "She has testified and I have heard her. I am convinced she should not be allowed to testify to that to the jury, so I sustain the objection to it."

Our review of the trial transcript convinces us that appellant was not afforded a full and fair opportunity to discredit Ms. Goodman's in court testimony. This, we think, constitutes reversible error.

The Fifth Circuit opinion in *Aetna Insurance Company v. Paddock*, 301 F.2d 807, 810–11 (5th Cir.1962), provides support for our disposition of this issue. There, the jury functioned as an advisory jury on the equitable issue of reformation of an insurance contract, but as a regular jury on the issue of damages. The trial court refused to allow a key witness to testify. According to the Fifth Circuit, this witness' testimony went to the very vitals of the case. The witness, however, was only testifying on the reformation issue, as to which the jury was advisory only. Nevertheless, the Fifth Circuit concluded that:

> The exclusion of the evidence bearing on this loan and repayment of it was error in spite of the fact that [the witness] only testified on the reformation question being heard by the advisory jury and on which the court ultimately made its own findings independent of the jury.

*Id.* at 812. More significantly, the court then stated: "Since it was the court which made these critical conclusions the court itself should have had this evidence, going as it does to the credibility of [the witness.]" *Id.* The court then reversed for a limited new trial, without an advisory jury, to allow the witness to testify and be cross-examined. *Id.*

Although Ms. Goodman testified before the trial court, out of the presence of the jury, we believe that the trial court's repeated comment that her testimony proved nothing, and that her impeachment by use of the prior written statement would be useless, created an atmosphere which effectively precluded appellant from cross-examining Ms. Goodman to determine whether her in court testimony was a recent fabrication or to otherwise impeach her in court testimony.[6] We therefore REVERSE the judgment of the trial court and REMAND for proceedings not inconsistent with this opinion.

---

**6.** Federal Rule of Evidence 607 allows a party to impeach his own witness.