**Anita A. BEESLEY, Plaintiff,**

v.

**The HARTFORD FIRE INSURANCE COMPANY, etc., et al., Defendants.**

**Civ. A. No. 89–AR–1062–S.**

United States District Court,
N.D. Alabama, S.D.

Aug. 14, 1989.

John Lee Quinn, Robert Moore Weaver, Longshore Nakamura & Quinn, Birmingham, Ala., for plaintiff.

Augusta S. Dowd, Lange Simpson Robinson & Somerville, J. Mark White, White Dunn & Booker, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration a motion by defendant, Hartford Insurance Group, to strike a jury demand contained in the Title VII complaint of plaintiff, Anita A. Beesley, alleging employment discrimination based on plaintiff's sex. Beesley not only seeks the equitable remedy of reinstatement but she charges sexual harassment and expressly asks for "$250,000.00 ... as compensatory damages and $2,500,-000.00 as punitive damages." The issue of the right to a jury trial in a Title VII case is thus squarely and fairly presented. This court can find no way to duck it. Hartford seems to think the jury demand is frivolous. This court does not.

The Civil Rights Act of 1964, § 701, *et seq.*, 42 U.S.C. § 2000e *et seq.*, makes no mention of who shall resolve disputes of fact. It neither expressly grants trial by jury nor precludes trial by jury. Undoubtedly because of the pervasive judicial perception extant in 1964, and for years thereafter, that Southern juries would not do their duty in Title VII cases because of resistance to the Civil Rights Act, the federal courts in Title VII cases simply ignored the mandate of the Seventh Amendment. The days when Southern juries could not be trusted to follow the laws enacted to guarantee civil rights, assuming that those days at one time existed, are long gone. Admittedly in 1964, the jury wheel in the Northern District of Alabama did not accurately reflect the racial and gender makeup of the district. In 1989, the regularly anticipated venire in this district, closely monitored by the Eleventh Circuit, will mirror almost exactly the general population's percentage of black-white and male-female. If jury fairness and objectivity had not long ago become the norm in the South, and in the Eleventh Circuit in particular, fairness and objectivity came to full flower with *Fludd v. Dykes*, 863 F.2d 822 (11th Cir.1989), in which the Eleventh Circuit startlingly expanded *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), into the civil area. *Fludd* prevents an employer in a Title VII action brought by a black person from preemptively striking black veniremen during jury selection and requires the very difficult articulation of a legitimate, non-racial reason for each such strike. The Eleventh Circuit is out front in guaranteeing jury fairness and objectivity in discrimination cases.

In recent years many a Southern black plaintiff claiming to be the victim of an act of race discrimination by his private employer has simultaneously invoked 42 U.S.C. § 1981 (that is, prior to *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)), and Title VII. The obvious reason for traveling the dual path toward judicially mandated equal treatment has been to obtain a jury trial instead of a bench trial. In other words, many blacks and women now trust jurors more than they trust judges to decide the truth of their allegations of race and sex prejudice. If, in the early years after 1964, it was the *employer* who longed for a jury and was denied it, it is now the *employee* who wants a jury trial and deserves it. If judges still need to hold tightly to the decisional reins, it is only to protect employers from unconscionably large jury verdicts. Southern juries of 1989 look and act much differently than did 1964's

Southern juries. If there is now a legitimate reason to deny the right to trial by jury anywhere in the United States because juries cannot be trusted, then the legitimate course of action is to eliminate the Seventh Amendment by constitutional means.

■ In its brief, Hartford here relies exclusively upon *Wilson v. City of Aliceville,* 779 F.2d 631 (11th Cir.1986), in which the Eleventh Circuit, in its most recent expression on the subject at hand, repeated, as *dictum,* the conventional wisdom, a self-perpetuating myth, that a plaintiff in a Title VII case "is not entitled to one [a jury trial] as a matter of right." 779 F.2d at 635. The Eleventh Circuit then proceeded to elongate its said *dictum* by saying:

When a trial court sits with the aid of a jury in a Title VII case the jury is advisory only, unless both parties consent to make the jury's verdict binding.

779 F.2d at 635.

For these propositions, the only Supreme Court decision which the Eleventh Circuit cited was *Sweeny Independent School District v. Harkless,* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). *In its entirety* that hoary case contained the following lines:

Petition for writ of certiorari to the United States Court of Appeals for the Fifth Circuit.

Jan. 11, 1971. Denied.

The denial by the Supreme Court of a petition for writ of certiorari has absolutely no precedential value. In *Maryland v. Baltimore Radio Show,* 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1949), Mr. Justice Frankfurter, with his inimitable incisiveness, explained this lack of precedential value:

Inasmuch, therefore, as all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, this Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review. The Court has said this again and again; again and again the admonition has to be repeated.

338 U.S. at 919, 70 S.Ct. at 255.

■ After a hard search, this court has been unable to find *a single case* wherein the Supreme Court has actually *held* that a party in a Title VII case cannot demand a jury. Lower appellate courts have simply assumed and presumed. Although they have not been expressly gainsaid by the Supreme Court *in a Title VII case,* the Supreme Court, nevertheless, has recently made the governing principles clear. *City of Aliceville,* and the decisions therein cited by the Eleventh Circuit, were all decided prior to *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), and prior to *Granfinanciera S.A. v. Nordberg,* 492 U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). These two non-precedent shattering Supreme Court decisions not only reveal the present Supreme Court's recognition of the overriding importance of the Seventh Amendment's absolute guarantee of trial by jury in all cases not historically considered equitable in nature, but in *Tull* the unanimous Court expressly held that a cause of action created by Congress carries a jury trial as a matter of right if "analogous to 'Suits at common law' ". 107 S.Ct. at 1835. New life has suddenly been breathed into the Seventh Amendment as one of the more important guarantees catalogued in the Bill of Rights. The *Tull* court said:

Nothing in the language of the Clean Water Act or its legislative history implies any congressional intent to grant defendants the right of a jury trial during the liability or penalty phase of the civil suit proceedings. *Given this statutory silence, we must answer the constitutional question presented.*

107 S.Ct. at 1835 n. 3 (emphasis supplied).

Congress was just as silent in the Civil Rights Act as it was in the Clean Water Act. The Supreme Court in *Tull* next pointed out that the "punitive damages remedy is legal, not equitable," and ended by answering the constitutional question which it had posed by holding that the jury trial guaranteed by the Seventh Amendment is automatically attributed to statutory causes unless the creating statute ex-

pressly withheld the right to a jury trial. 107 S.Ct. at 1838.

This court believes that *Tull* and *Granfinanciera*, by clear and necessary implication, overruled all prior circuit and district court decisions which had denied a jury trial to a party in a Title VII action, that is, unless the relief sought is purely equitable. This is especially true where, as here, the plaintiff seeks both compensatory and *punitive* damages, and it is even more true, where, as here, the plaintiff appends a legal claim for assault and battery under state law, a cause of action which routinely carries with it a right to trial by jury. For this court's broader thoughts on the Seventh Amendment in the context of a statutory cause of action, see *Whitt v. Goodyear Tire & Rubber Co.*, 676 F.Supp. 1119 (N.D.Ala.1987).

It is illogical as well as impractical for a trial court to honor the specific *statutory* guarantee of jury trial in a case brought by someone over 40 years of age under the Age Discrimination in Employment Act in a case where the ADEA complaint contains, as it often does, a separate count claiming that the adverse employment decision was also, or alternatively, the result of sex and/or race discrimination. To attempt to try a single case simultaneously "jury" and "non-jury" is a ridiculous exercise on its face, even if it may be theoretically possible.[1]

Lastly, in *United States v. M.C.C. of Florida, Inc.*, 863 F.2d 802 (11th Cir.1989), the Eleventh Circuit itself, three years after *City of Aliceville*, finally articulated its realization that the Seventh Amendment controls the question of the availability of a jury trial in disposing of traditionally legal issues, even though the issues are presented during the trial of a statutory cause of

action, where Congress is silent on the subject. *M.C.C. of Florida* can easily be reconciled with *Tull* and *Granfinanciera*, but it cannot very easily be reconciled with *City of Aliceville*, if the two can be reconciled at all.

Because the unwritten rationale for non-jury trials in Title VII cases no longer appertains, and because the Seventh Amendment demands it, Hartford's motion to strike plaintiff's jury demand will be denied, and the case will proceed henceforward as a jury case.

---

**1.** Try this scenario, which can realistically be anticipated: A former employee sues her employer for terminating her in violation of the ADEA. She properly demands a jury trial. Contemporaneously she files a separate supposedly non-jury action under Title VII claiming that she was harassed and ultimately fired because she was female. In deposition she says that her boss told her, "We don't need any old women in this job." There is no pressure to consolidate, and no real reason to consolidate, two cases where not only are the liability theories different but where one claim is "jury" and the other "non-jury." The Title VII case comes

to trial first. The bench trial judge, either consciously or unconsciously, decides that if the plaintiff has a legitimate complaint it is under the ADEA, so he rules against the plaintiff. Thereafter, an application of *res judicata* to the ADEA complaint would deny plaintiff the jury trial guaranteed her by the ADEA, so the ADEA case proceeds to jury trial with the jury being ostentatiously and predictably told by the employer that plaintiff has previously insisted that her termination was the product of sexual harassment. The jury result is just as predictable as was the employer's strategy. Plaintiff loses both cases.