United States Court of Appeals,

Eleventh Circuit.

No. 94-6504.

Henry M. GOODGAME;  James Brown, Plaintiffs-Appellants,

v.

AMERICAN CAST IRON PIPE COMPANY, Defendant-Appellee.

Feb. 28, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-91-N-185-S), Edwin L. Nelson, Judge.

Before EDMONDSON and COX, Circuit Judges, and FAY, Senior Circuit Judge.

COX, Circuit Judge:

The question of whether to apply the provisions of the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 (1991), retroactively is now a settled one.  *See Landgraf v. USI Film Products,* --- U.S. ----, ---- - ----, 114 S.Ct. 1483, 1505-08, 128 L.Ed.2d 229 (1994) (amendments to Title VII concerning punitive and compensatory damages only apply prospectively);  *Rivers v. Roadway Express, Inc.,* --- U.S. ----, ---- - ----, 114 S.Ct. 1510, 1519-20, 128 L.Ed.2d 274 (1994) (amendments to § 1981 not retroactive). Before *Landgraf, Rivers,* and our decision in *Curtis v. Metro Ambulance Service, Inc.,* 982 F.2d 472, 473-74 (11th Cir.1993), many trial courts reached the opposite conclusion and applied the Act to claims pending before its November 1991 effective date.  Once it became apparent that such a course of action was incorrect, those courts were faced with the challenge of repairing the damage done by trial of the case under the wrong law.  This appeal arises out of such a case.

In this case, the jury awarded Henry Goodgame nominal and punitive damages and James Brown back pay and punitive damages, based on instructions reflecting provisions of the Civil Rights Act of 1991, passed while the case was pending. After we ruled in *Curtis* that the 1991 Act did not apply retroactively, the trial court set aside the jury's verdict, vacated the award of punitive damages, and, treating the jury as advisory, entered judgment for American Cast Iron Pipe Company (ACIPCO) on all counts except for Goodgame's Title VII claim. The court awarded Goodgame $1 in nominal damages. On appeal, Goodgame and Brown challenge these actions by the court. For the following reasons, we affirm in part, reverse in part, and remand for a new trial on two of the plaintiffs' § 1981 claims.

I. BACKGROUND

Henry Goodgame and James Brown, who are African-American, brought suit against ACIPCO, claiming that they were denied promotions because of their race. Goodgame and Brown worked in ACIPCO's pipe manufacturing plant in Birmingham, Alabama. ACIPCO hired Goodgame as a laborer in 1954, and over the years he learned how to perform all the different jobs in the plant's Monocast Department. By 1971, Goodgame was supervising other employees in operating an annealing oven, used to heat pipe segments in order to relieve stress within the pipe material. In 1975, ACIPCO promoted Goodgame to a permanent supervisory position, Shift Foreman in the Number 2 Cleaning Shed. After his promotion, Goodgame held various supervisory positions within the Monocast Department.

In January 1990, ACIPCO promoted David Burnett, instead of

Goodgame, to the position of Shop Foreman over the Number 2 and 3 Cleaning Sheds. ACIPCO hired Burnett, who is white, in 1963; over the years, Burnett worked in various capacities in the Monocast Department. At the time Burnett was promoted, Goodgame had been reassigned to the Number 1 Cleaning Shed. After the promotion was announced, Goodgame met with Superintendent Paul Crocker to protest Burnett's selection. Crocker told Goodgame that Burnett was chosen only because he "happened to be up there" in the Number 2 Shed working as a supervisory employee. (R. 5-55 at 75.) According to Crocker, who made selection decisions for supervisory jobs in the Monocast Department, the two employees' comparative experience was not a determinative factor, since both Goodgame and Burnett had worked for ACIPCO for so long. (R. 6-55 at 383-84.)

ACIPCO hired James Brown in 1969 to work in the Monocast Department as a Spigotman. Over the next fifteen years, Brown held various nonsupervisory positions. In 1984 he was promoted to Casting Machine Operator, a position he held until 1988, when he became Shop Preparation Leadman. While a Casting Machine Operator, Brown trained two white employees, Roy Caffee and Mike Short, to operate his machine, and after he became a Shop Preparation Leadman, he trained David Allgood, who is also white, in shop preparation. ACIPCO eventually promoted all three trainees, allegedly at Brown's expense: in December 1989 Caffee was selected for the position of Casting Shift Foreman in the Number 2 Shop; about the same time, Short was promoted to the position of Casting Leadman in the Number 3 Shop; and in September 1990 Allgood was

selected for the position of Casting Leadman in the Number 1 Shop.[1] Brown contends that in July 1991, he was denied a fourth promotion because of his race when ACIPCO named Lawrence Vickers, a white man, Shift Foreman in the Number 3 Shop, despite the fact that Brown had more experience than Vickers in the Number 3 Shop.

Shortly after ACIPCO promoted Burnett to Shop Foreman, Goodgame filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that ACIPCO refused to promote Goodgame because of his race. Brown filed a similar EEOC complaint in September 1990, soon after he was denied the promotion to Casting Leadman that Allgood received. Brown asserted that ACIPCO's refusal to promote him was "continuing" and further alleged that ACIPCO used selection criteria for promotions that had a disparate impact on African-American employees. The EEOC issued Goodgame and Brown right-to-sue letters, and in January 1991 they filed this lawsuit.

II. PROCEDURAL HISTORY

Goodgame and Brown filed a consolidated amended complaint in February 1991. The complaint alleges that they were denied promotions based on their race, in violation of 42 U.S.C. § 1981 (1988), and of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (1988). The complaint also includes a claim that Brown was "continually" denied supervisory and managerial positions by ACIPCO. (R. 1-3 at 3.) Goodgame and Brown requested a jury trial with respect to their § 1981 claims, but at the time

---

[1] Brown was eventually promoted to the position of Casting Leadman in September 1990, after he filed his complaint with the Equal Employment Opportunity Commission.

had no right to a jury under Title VII.

During the course of the litigation, Congress passed the Civil Rights Act of 1991. *See* 42 U.S.C. §§ 1981 & 1981a (Supp.1991); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 (Supp.1991). The 1991 Act changed the law applicable to Goodgame's and Brown's claims in several important respects. The Act broadened the scope of § 1981, by making it applicable to all promotion claims. *See* 42 U.S.C. § 1981(b). Prior to the 1991 Act, a promotion had to "rise[ ] to the level of an opportunity for a new and distinct relation between the employee and the employer" before a discriminatory promotion decision was actionable under § 1981. *Patterson v. McLean Credit Union,* 491 U.S. 164, 185, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989). The Act also liberalized Title VII, by creating a right to trial by jury and allowing the award of compensatory and punitive damages. *See* 42 U.S.C. § 1981a(a)(1) & (c) (Supp.1991). Before the Act, only equitable relief was available.

After the effective date of the Act, Goodgame and Brown moved to amend their complaint to state claims based on the new provisions of § 1981 and Title VII. The trial court held, over ACIPCO's objections, that the new provisions retroactively applied to these claims, and allowed Goodgame and Brown to amend their complaint. At trial, the court submitted Goodgame's and Brown's claims to the jury on special interrogatories that made no distinction between the Title VII and § 1981 claims. The instructions were based on the 1991 Act, so they did not require the jury to determine whether any of the promotions involved a new

and distinct relationship between ACIPCO and Goodgame or Brown. The instructions also allowed the jury to award compensatory and punitive damages under either Title VII or § 1981.

The jury returned a verdict for Goodgame on his promotion claim, awarding him $1 in nominal damages[2] and $250,000 in punitive damages. The verdict did not state whether the award was based on § 1981 or on Title VII. The jury returned a verdict for Brown based only on the Short promotion to Casting Leadman. Brown received back pay of $727.44 and $250,000 in punitive damages; this award was presumably under § 1981, since the trial court had already granted ACIPCO judgment as a matter of law on Brown's Title VII claim arising from the Short promotion.[3]

After the trial, but before the trial court entered a final judgment, this court held that the Civil Rights Act of 1991 did not apply retroactively. *See Curtis,* 982 F.2d at 473-74. Faced with a verdict based on the improper holding that the 1991 Act applied to Goodgame's and Brown's claims, the trial court vacated the award of punitive damages and set aside the jury verdict, stating that the court would treat the jury as advisory pursuant to Fed.R.Civ.P. 39(c). (R. 2 at 45.) The court asked the parties to submit proposed findings of fact consistent with the jury verdict, in

---

[2]The evidence showed that the wages Goodgame received after Burnett was promoted exceeded Burnett's salary.

[3]After Goodgame and Brown presented their case, the court granted ACIPCO's motion for judgment as a matter of law on two of Brown's Title VII claims. The court ruled that the claims were time-barred because Brown had filed his EEOC complaint too late to include the December 1989 Caffee and Short promotions. *See* 42 U.S.C. § 2000e-5(e)(1) (1988) (providing 180-day limit for filing charges with EEOC).

order to help it fashion a final judgment compatible with pre-1991 Title VII and § 1981 provisions.

In April 1994 the trial court entered judgment, finding for ACIPCO on every count except for Goodgame's Title VII claim. The court granted ACIPCO judgment as a matter of law on the § 1981 claims. The court ruled that Goodgame and Brown had effectively waived their claims under "old" § 1981, since after they amended their complaint, they failed to allege and prove that the promotions at issue involved new and distinct relationships. The court also reiterated its earlier conclusion that Brown's Title VII claims with regard to two of the promotions were time-barred; the court followed the jury findings in denying Brown relief on his other Title VII claims. The court awarded Goodgame $1 in nominal damages on his Title VII claim.

After the trial court entered judgment, Goodgame and Brown moved to alter, amend, or vacate the judgment and alternatively moved for a new trial, arguing that the evidence they presented at trial at least raised a jury question as to whether the promotions at issue involved new and distinct relationships. (R. 2-59 at 1-2, 4.)[4] The trial court rejected their contentions and denied the motions. This appeal followed.

III. ISSUES ON APPEAL

Goodgame and Brown argue that the trial court committed several errors in setting aside the jury's verdict and in its final

---

[4]Brown also challenged as erroneous the court's conclusion that two of Brown's promotion claims were untimely, arguing that those claims were part of a continuing violation of Title VII by ACIPCO.

judgment. They assert that the court erred by treating the jury as "advisory" under Fed.R.Civ.P. 39(c), since they had a right to a jury trial on their § 1981 claims. [5] They also challenge the court's decision to grant ACIPCO judgment as a matter of law on their § 1981 claims; they argue that the court should have granted them a new trial so that a jury could determine whether the disputed promotions involved new and distinct relationships as required under "old" § 1981. Goodgame and Brown also contend that the trial court abused its discretion by overturning the jury award of punitive damages.

IV. DISCUSSION

A. The trial court's treatment of the jury verdicts

Goodgame and Brown contend that the trial court erred by treating the jury as advisory under Fed.R.Civ.P. 39(c). [6] Rule 39(c), they assert, does not apply to their § 1981 claims at all, since they had a right to a jury trial with regard to those claims irrespective of whether the 1991 Act applied. Goodgame and Brown

---

[5]Goodgame and Brown do not challenge the trial court's conclusion that they have no right to a jury under pre-1991 Act Title VII. *See Wilson v. City of Aliceville,* 779 F.2d 631, 635–36 (11th Cir.1986) (no right to trial by jury since Title VII claims are entirely in equity; where an advisory jury is used pursuant to Rule 39(c), court is free to adopt or disregard jury's findings).

The only issue plaintiffs raise on appeal concerning their Title VII claims is Brown's argument that, since his Title VII claims amounted to a continuing violation by ACIPCO, the trial court erred in finding that two of them were untimely. We find Brown's argument meritless and do not discuss it further. *See* 11th Cir.R. 36-1(a).

[6]Fed.R.Civ.P. 39(c) provides that in "all actions not triable of right by a jury," a court may try any issue with an advisory jury's assistance or order that the action be tried by a jury as if there was a right to a jury trial.

argue that the trial court should have allowed a properly instructed jury to reexamine their § 1981 claims.[7]

We review the trial court's application of Rule 39(c) *de novo. Burns v. Lawther,* 53 F.3d 1237, 1240 (11th Cir.1995). Our scrutiny is "most exacting" where, as here, an appellant's right to a jury trial is implicated. *City of Morgantown v. Royal Ins. Co.,* 337 U.S. 254, 258, 69 S.Ct. 1067, 1069-70, 93 L.Ed. 1347 (1949); *Burns,* 53 F.3d at 1240; *see also Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959) (stating that where related legal and equitable claims are brought in same proceeding, jury must be allowed to decide legal claims first; then court can fashion equitable relief consistent with jury's findings).

We agree with Goodgame and Brown that Rule 39(c) plainly does not apply to claims, like their § 1981 claims, that are triable by jury as a matter of right. *See Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). It is axiomatic in such cases that a trial court cannot disregard a jury's verdict and substitute its own findings in deciding claims; otherwise, the court could effectively subsume the jury's function and deprive litigants of their right to trial by jury. *Cf. Beacon Theatres,* 359 U.S. at 506-10, 79 S.Ct. at 954-56 (discussing the principle that use of

---

[7]In their brief, Goodgame and Brown also argue that the court should have left the verdicts intact, in light of their right to a jury trial, despite the fact that the wrong law was applied. This argument is meritless; the trial court had to do something to correct the errors committed because of the retroactive application of the 1991 Act.

discretion by a court to let equitable claims precede legal ones, possibly infringing the right to jury trial, requires at least the danger of irreparable harm or inadequacy of legal remedies). When an advisory jury is empaneled under Rule 39(c), "[i]ts findings of fact are not binding on the trial court." *Wilson v. City of Aliceville,* 779 F.2d 631, 635-36 (11th Cir.1986). Just the opposite must be true when a jury is demanded as a matter of right by a party.

The trial court, in an attempt to salvage the jury's verdicts, set them aside, stated that it would treat the jury as "advisory," and asked the parties to submit proposed findings of fact consistent with the jury's findings. (R. 2 at 45.) This course of action was insufficient to protect Goodgame and Brown's right to a jury trial on their § 1981 claims.[8]

Goodgame and Brown contend that the court should have granted them a new trial and allowed a properly instructed jury to decide if the promotions at issue involved new and distinct relationships instead of granting ACIPCO judgment as a matter of law based on its finding that Goodgame and Brown had waited "too late" to raise claims under "old" § 1981. (R. 2-57 at 4.) ACIPCO counters that the trial court acted within its discretion when it denied Goodgame and Brown's attempt to reassert their pre-1991 Act claims after the court set aside the jury's verdicts. ACIPCO argues that Goodgame

---

[8]Because the jury instructions did not distinguish the Title VII claims from the § 1981 claims, it is unclear whether the jury found for Goodgame based on his Title VII claim, his § 1981 claim, or both. But Brown's award, based on the December 1989, Short promotion, necessarily rested on his § 1981 claim, because the court had ruled that the Title VII claim concerning the Short promotion was untimely.

and Brown should be bound by their decision to proceed under the new act.

We review a trial court's denial of a motion for a new trial for an abuse of discretion. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1049 (11th Cir.1989). In this case, the trial court realized that the jury had been misinstructed and took remedial action. The issue is whether the trial court acted properly in repairing the damage caused by the erroneous instructions.

We disagree with the trial court's conclusion that, because Goodgame and Brown waited until after the trial to assert the issue, they had no right to have a jury consider whether the disputed promotions rose "to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377. Goodgame and Brown should not have been expected to tailor their § 1981 claims to be consistent with both pre-1991 law and the 1991 Act once the trial court held that the 1991 Act applied to their claims and allowed them to amend their complaint accordingly. The existence of a "new and distinct relationship" as required by *Patterson* was the only element of Goodgame's and Brown's causes of action omitted from the instructions the jury received. Since a properly instructed jury arguably could find for Goodgame and Brown, the proper remedy in this case was a new trial, not judgment as a matter of law for ACIPCO.[9] A new trial is the remedy this court generally orders

_____

[9]We express no opinion as to whether the evidence offered at trial presented a jury question as to a new and distinct relationship. The district court has not addressed this issue.

when it reverses based on incorrect jury instructions. *See Bank South Leasing, Inc. v. Williams,* 778 F.2d 704, 707 (11th Cir.1985) (remanding for new trial where evidence existed in support of different result given a properly-instructed jury); *Johnson v. Bryant,* 671 F.2d 1276, 1280 (11th Cir.1982) (stating that reversal is warranted where we are left with "a substantial and ineradicable doubt" as to whether the jury was properly guided in its deliberations) (citation omitted); *but see Mojica v. Gannett Co.,* 7 F.3d 552, 560 (7th Cir.1993) (declining to remand for new trial under proper version of § 1981 where plaintiff presented no evidence during trial that promotion to different time slot would have involved new and distinct relations with employer), *cert. denied,* --- U.S. ----, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994).

We conclude that the trial court's denial of Goodgame and Brown's request for a new trial as to two of the plaintiffs' § 1981 claims was an abuse of discretion. [10] We therefore reverse and remand for a new trial on Goodgame's § 1981 claim and Brown's §

---

Goodgame and Brown were not, under the trial court's ruling, called upon to present such evidence; that being the case, it would be unfair to decide the issue without allowing them an opportunity to present evidence. *See Wall v. Trust Co. of Georgia,* 946 F.2d 805, 808-09 (11th Cir.1991) (comparing aspects of two jobs in weighing whether new and distinct relationship would arise); *Patterson v. McLean Credit Union,* 784 F.Supp. 268, 284 (M.D.N.C.1992) (listing factors to consider in determining claims under § 1981), *on remand from Patterson,* 491 U.S. 164, 109 S.Ct. 2363, *aff'd,* 39 F.3d 515 (4th Cir.1994).

[10]The trial court did not abuse its discretion in disposing of Brown's other § 1981 claims. Since the jury found no wrongdoing on ACIPCO's part under the more liberal version of § 1981, no reasonable jury could have rendered a verdict for Brown under the more rigorous standards of the prior version of § 1981. We remand only those claims on which the jury based its awards for the plaintiffs.

1981 claim based on the December 1989 Short promotion.

B. Punitive damages

Goodgame and Brown finally contend that the trial court erred by vacating their punitive damage awards. They reason that the awards, even though impermissible under "old" Title VII, should be allowed to stand based on their § 1981 claims. ACIPCO counters that the trial court's decision was clearly mandated by precedent holding that punitive damages remain unavailable for Title VII claims arising before the effective date of the 1991 Act. ACIPCO argues that the issue of punitive damages under § 1981 is irrelevant or at least premature, since such damages are available only if Goodgame and Brown first show that new and distinct relationships would have resulted from the promotions at issue.

We agree with ACIPCO that the trial court's action was dictated by *Landgraf, Rivers,* and *Curtis.* We are bound by the same precedent to affirm the trial court's decision to vacate the jury's punitive damage awards because Goodgame and Brown were not entitled to seek punitive damages under the applicable version of Title VII, and because the jury was not properly instructed on their § 1981 claims. *Accord Dombeck v. Milwaukee Valve Co.,* 40 F.3d 230, 235 (7th Cir.1994). But, in light of our decision to remand two of the § 1981 claims, Goodgame and Brown may on retrial seek punitive damages, if they first succeed in showing that the promotions at issue involved new and distinct relationships as required by *Patterson.* If the promotion decisions are actionable, Goodgame and Brown can properly recover punitive damages if they demonstrate that ACIPCO was driven by an "evil motive or intent" in refusing to

promote Goodgame and Brown, or that ACIPCO's conduct "involve[d] reckless or callous indifference to the federally protected rights of others." *Stallworth v. Shuler,* 777 F.2d 1431, 1435 (11th Cir.1985).

V. CONCLUSION

For the foregoing reasons, we AFFIRM IN PART, REVERSE IN PART, and REMAND for a new trial as to Goodgame's § 1981 claim and Brown's § 1981 claim based on the December 1989 Short promotion.

AFFIRMED IN PART; REVERSED IN PART, and REMANDED.