[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 21, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10541
Non-Argument Calendar

_____

D. C. Docket No. 04-00161-CR-WTM-4-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOMINIC BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 21, 2005)

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

Dominic Brown appeals his convictions for: (1) carjacking, in violation of

18 U.S.C. § 2119; (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (3) possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). After review, we affirm Brown's convictions.

## I. BACKGROUND

### A. The Carjacking

At trial, the victim of the carjacking, Horace Duncan, Jr., testified that he was walking to his car around midnight when two men asked him for a ride. Duncan recognized one of the two men and agreed to give them a ride. The person who Duncan recognized sat in the passenger's seat and the other person, whom Duncan had never met, sat in the back seat.

As Duncan was driving, he felt a gun in the back of his head. The front seat passenger then placed a gun at Duncan's temple and told Duncan that "this is a jack move." The back seat passenger then hit Duncan on the head and told him to get of the car.

When Duncan got out of the car, the back seat passenger hit him two to three more times until Duncan fell to the ground. The front seat passenger then hit Duncan a couple of times and told Duncan, "you gonna die here tonight. I'm gonna leave you to die here tonight." The front seat passenger, later identified as

2

Brown, then shot Duncan and drove away with Duncan's car and his wallet, which contained Duncan's driver's license, his birth certificate, his social security card, and some cash.

The police later found Duncan, who told the police that he had been robbed and shot. Duncan identified his car as a 1991 Mercury Grand Marquis. Duncan testified that he picked out Brown from a police photo lineup as the front seat passenger in his car that night, and as the one who took his wallet and shot him.

**B.    Cross-examination of Duncan**

During cross-examination at trial, defense counsel asked Duncan about statements he made to police on February 17 and 23 when the police interviewed him about the February 8 carjacking. In an effort to impeach Duncan's credibility with a prior inconsistent statement, defense counsel attempted to show Duncan a copy of the transcript from Brown's probation revocation hearing. The district court immediately called counsel to a sidebar conference and told counsel to ask the witness first whether he made a particular statement before attempting to impeach him with a prior inconsistent statement, as follows:

> Now, I'm going to say this once during this trial and only once: if we are going to do any examination about prior statements, the rule is that you first ask the witness whether he made the statement. You don't say, do you recall this, do you recall that. You say, did you say, what. And you ask him whether he made that statement or not, okay. If he admits it, that's the end of it. If he denies it, then you say, do you

3

recall on such and such a date making a statement to an officer, making a statement in a trial transcript, or whatever where you said so and so. You don't approach him. You don't – in federal court show him the statement unless he asks to see the statement. Now that is the federal rule and that's the way were going to try this case. Is there any misunderstanding about that?

Defense counsel responded that he understood the district court. Defense counsel then stated that he had no further questions for Duncan, and ended the cross-examination.

## C.    Police Officers' Testimony

Officer Ashley Brown testified that he was working in an off-duty capacity as a security officer for a hotel when he heard a call over his radio about Duncan's car. Officer Brown saw the described car in the vicinity and subsequently stopped it forcibly. Defendant Brown, the driver, jumped out of the car with a gun and started running. Defendant Brown then dropped the gun, which had three live rounds in it. Officer Taharka, who was assisting Officer Brown, apprehended defendant Brown while Officer Brown retrieved the dropped gun. Officer Taharka testified that defendant Brown was in possession of Duncan's driver's license, social security card, and credit card.

Officer Mydell testified that after defendant Brown was arrested, Officer Mydell obtained from Brown a pair of blood-stained blue jeans and tennis shoes. DNA tests later indicated that the blood matched Duncan's with a statistical

4

probability of one in four quintillion. Officer Mydell met with Duncan on March 9, showed Duncan a photo lineup, and Duncan identified Brown as his attacker.

On cross-examination, defense counsel attempted to question Officer Mydell about statements Duncan made to Officer Mydell on February 17 when Officer Mydell interviewed Duncan at the hospital. The district court warned defense counsel about eliciting inadmissible hearsay; however, defense counsel stated that he was merely questioning Officer Mydell about the inconsistent statements Duncan made to impeach Duncan, not as substantive evidence. The district court did not allow the cross-examination. The inconsistent statements that defense counsel wanted to inquire about were statements that Duncan made to Officer Mydell at the hospital on February 17, including: (1) that Duncan was driving, not walking, when he stopped upon seeing two black males that he knew; and (2) that Duncan tried to approach the individuals and fight them for his car.

Later, Officer Bill Cunningham testified regarding similar statements that Duncan made at the hospital. Specifically, Officer Cunningham testified that Duncan told him that Duncan was driving at the time he saw Brown and the other individual. Further, Duncan told Officer Cunningham that it was the other individual he knew, and not Brown. However, Officer Cunningham stated that Duncan was heavily sedated during the exchange.

**D.     Jury Deliberations**

During the jury deliberations, the district court received a note from the jury asking whether in order to convict Brown for Count 3, [the possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)], "does the gun submitted into evidence have to be the gun used in the crime?"  The district court responded simply "No" to the jury's question.

The government took the position that the answer was no because on a § 924(c) count, the government can allege a firearm was used and discharged in a crime but there is no proof required as to the particularity of the firearm and the government need not even have the gun to get a § 924(c) conviction.

Defense counsel responded: "Your Honor, I thought that for Count Three [the § 924(c) charge] it had to be the gun that was from Count Two [the § 922(g)(1) felon-in-possession charge], and that gun would have to be proven to have been in interstate commerce."  The gun submitted into evidence was a .38 caliber special, serial number 08938, which was shown to have traveled in interstate commerce.

The jury found Brown guilty as to all three counts in the indictment, and the district court sentenced Brown to 300 months' imprisonment.

## II. DISCUSSION

### A.    Cross-examination of Duncan

Brown argues that the district court abused its discretion by cutting short his cross-examination of Duncan.[1]  We disagree.

The district court did not abuse its discretion because Brown himself discontinued the cross-examination after the district court instructed him on how to properly cross-examine the victim using prior inconsistent statements.  As stated above, after the district court instructed Brown on the proper cross-examination of Duncan, defense counsel stated that he had no further questions for Duncan and ended the cross-examination.

### B.    Cross-examination of Officer Mydell

Brown also contends that the district court abused its discretion by not permitting him to cross-examine Officer Mydell regarding allegedly inconsistent statements that the victim, Horace Duncan, Jr., made to Officer Mydell.[2]  Brown

---

[1]As stated earlier, we review the district court's restrictions on cross-examination for an abuse of discretion.  United States v. Baptista-Rodriguez, 17 F.3d 1354, 1370-71 (11th Cir. 1994).

[2]We review the district court's evidentiary rulings for abuse of discretion.  United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000).  "An erroneous evidentiary ruling will result in reversal only if the resulting error was not harmless.  An error is harmless unless 'there is a reasonable likelihood that [it] affected the defendant's substantial rights.'" United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (internal citation omitted).  In deciding if an error substantially affected the outcome, we weigh the record as a whole (i.e., the facts, context of error, and resulting prejudice) against the evidence of the defendant's guilt.  See id.

7

argues that he was not attempting to introduce Duncan's inconsistent statements to Officer Mydell for the truth of the matter asserted, but rather to attack Duncan's credibility. Brown contends further that his not being permitted to cross-examine Officer Mydell about Duncan's statements violated his Confrontation Clause rights under the Sixth Amendment.

"[U]nder Federal Rule of Evidence 801(d)(1)(A) prior inconsistent statements are not hearsay and are admissible as substantive evidence if given under oath or subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Wilson v. City of Aliceville, 779 F.2d 631, 636 (11th Cir. 1986); see also Fed. R. Evid. 801(d)(1)(A).[3] Prior inconsistent statements "not falling within [the] boundaries [of Rule 801] can be used for impeachment under Rule 607, although they are not admissible as substantive evidence." Wilson, 779 F.2d at 636.

Officer Mydell's testimony showing Duncan's prior inconsistent statements was not offered to prove the truth of the out-of-court assertions but rather to attack the credibility of Duncan's testimony during trial. However, even assuming such testimony were admissible as impeachment and thus an error occurred, such error

---

[3] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Federal Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Fed. R. Evid. 607.

was harmless in light of the overwhelming evidence supporting the verdict, including: (1) the testimony of Officer Brown and Officer Taharka spotting Brown driving Duncan's car; (2) Officer Taharka finding Duncan's driver's license, ATM card and social security card in Brown's pants pocket; (3) the DNA tests showing that Brown's pants contained splatters of Duncan's blood; and (4) Duncan identifying Brown in a photo line-up.[4]  Moreover, at least one of the contradictory statements Duncan made was established through the cross-examination of Officer Cunningham.

Consequently, Brown is not entitled to a new trial based on the district court's limitation of defense counsel's cross-examination of Officer Mydell.

## C.    Jury Question

Lastly, Brown argues that the district court erred when it responded "No" to the jury's question.  Before discussing the question and response, we note that Brown makes an additional argument on appeal that he did not make in the district court.

In the district court, defense counsel argued that the government had to

---

[4]Harmless error review requires that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  Fed. R. Crim. P. 52(a).  "To find harmless error, we must determine that the error did not affect the substantial rights of the parties."  United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (quoting United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998)).  "A constitutional error . . . must be disregarded as not affecting substantial rights if the error is harmless beyond a reasonable doubt."  Id. (internal quotation marks, punctuation and citation omitted).

prove that defendant Brown used and discharged a <u>particular</u> firearm that traveled in interstate commerce in order to convict Brown under § 924(c)(1)(A). On appeal, Brown additionally argues that a fatal variance occurred between the indictment and the government's proof when the district court answered "No" when the jury asked whether the gun in evidence had to be the gun used in the carjacking crime for purposes of the § 924(c)(1)(A) count.

The only gun that the government introduced into evidence was the .38 caliber revolver, serial number 08938. The § 924(c)(1)(A) count of the indictment charged that Brown "did knowingly and intentionally possess and discharge a firearm, to wit: a Sport Arms .38 caliber special, serial no. 08938. . . ." Thus, this appeal presents two separate questions: (1) does a § 924(c)(1)(A) conviction for use and discharge of a firearm in furtherance of a crime of violence require that the government introduce the gun into evidence and prove the particulars of the gun; and (2) if not, was there a fatal variance between the indictment and the proof in this particular trial requiring reversal of Brown's convictions because the indictment did include specifics about the gun. The answer to both questions is no.

First, we have held that a firearm need not be entered into evidence to convict a defendant on a § 924(c)(1)(A) charge. See <u>United States v. Woodruff</u>, 296 F.3d 1041, 1049 (11th Cir. 2002) (concluding a sufficient basis existed for the

§ 924(c) conviction because "although the firearm used by Woodruff was not in evidence, the jury heard testimony about the weapon from three of the victims and viewed photographic evidence depicting the gun"); see also United States v. Williams, 334 F.3d 1228, 1231 (11th Cir. 2003) (stating that the § 924(c) charge in the indictment would have been correct "if no mention had been made of the handgun, and the generic term 'firearm' had been used throughout").  Thus, the district court did not err when it told the jury that the gun involved need not be entered in evidence in order to convict Brown for possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

Second, although the § 924(c)(1)(A) count referred to the firearm as a ".38 caliber special, serial no. 08938," there was also no fatal variance in this case.[5]  "A variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same."  United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990).  "The standard for determining whether a variance is material, and therefore fatal, is twofold:  (1) did

---

[5]Because Brown did not raise the variance issue in the district court, we review only for plain error.  United States v. Tillmon, 195 F.3d 640, 644-45 (11th Cir. 1999).  To prevail under plain error, the defendant must show that: "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings."  United States v. Gresham, 325 F.3d 1262, 1265 (11th Cir. 2003).

11

a variance occur; if so, (2) did the defendant suffer substantial prejudice." United

States v. Roberts, 308 F.3d 1147, 1156 (11th Cir. 2002).

This Court has concluded that an indictment issued pursuant to 18 U.S.C. §

924(c)(1)(A) is correct if the generic term "firearm" is used, and that detail about a

firearm listed in the indictment is mere surplusage. See Williams, 334 F.3d at

1231-32 (11th Cir. 2003) (stating that the fact that the gun in the § 924(c) count

was an "AK-47 rifle" and not a "handgun" as charged in the indictment was not

reversible error because "the word 'handgun' in the indictment was mere

surplusage"); see also United States v. McIntosh, 23 F.3d 1454, 1457 (8th Cir.

1994) ("Allegations in the indictment that are not necessary to establish a violation

of a statute are surplusage and may be disregarded if the remaining allegations are

sufficient to charge a crime."). In this case, the specifics regarding the type of

firearm were mere surplusage because the specific type of firearm is not an element

of a § 924(c)(1)(A) offense. See 18 U.S.C. § 924(c)(1)(A).[6] In light of Duncan's

---

[6]The relevant parts of 18 U.S.C. § 924(c)(1)(A) are that
[A]ny person who, during and in relation to any crime of violence...uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ...–
(i) be sentenced to a term of imprisonment of not less than 5 years;
(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

testimony that his assailant had a gun and shot him – reinforced by the recovery of a bullet in his abdominal cavity – there is sufficient evidence that Brown possessed and discharged a gun in furtherance of the carjacking. Because all that needs to be shown for a § 924(c)(1)(A) conviction is that Brown possessed and discharged a gun, see McIntosh, 23 F.3d at 1458, "[n]othing in the record suggests that [Brown] was in any way disadvantaged by the inclusion of the surplus language in the indictment." Williams, 334 F.3d at 1232.

### III. CONCLUSION

For the above stated reasons, we affirm Brown's convictions.

**AFFIRMED.**

---

18 U.S.C. § 924(c)(1)(A).